DAMON E. CUMMINGS & others[1] *vs.* SECRETARY OF
ENVIRONMENTAL AFFAIRS & others.[2]

Suffolk. October 9, 1987. — June 20, 1988.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Environment*, Environmental impact report. *Secretary of Environmental
Affairs. Administrative Law*, Agency, Judicial review, Agency's in-
terpretation of statute. *Statute*, Construction. *Jurisdiction*, Judicial re-
view of administrative action, Damage to the environment.

The Superior Court lacked subject matter jurisdiction of an action com-
menced by ten domiciliaries of the Commonwealth challenging a deter-
mination by the Secretary of Environmental Affairs that no environmental
impact report was required for a certain proposed development project.
[613-619] ABRAMS, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department
on June 9, 1986.

The case was heard by *George C. Keady, Jr.,* J., on a
motion to dismiss.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Gregor I. McGregor* (*Cynthia L. Amara* with him) for the
plaintiffs.

*Stephen C. Karnas*, Assistant Attorney General, for Secre-
tary of Environmental Affairs & another.

*Stephen M. Leonard* for Gloucester Landing Associates.

*Stephen D. Anderson & Arthur P. Kreiger*, for Sierra Club,
amicus curiae, submitted a brief.

*Richard S. Emmet*, for Conservation Law Foundation of
New England, Inc., amicus curiae, submitted a brief.

---

[1] Nine other persons domiciled within the Commonwealth.

[2] Commissioner of Environmental Quality Engineering, Gloucester Land-
ing Associates, and the Gloucester Redevelopment Authority.

O'CONNOR, J. The plaintiffs, ten citizens of the Common-wealth, allege in their complaint that the defendant Secretary violated the Massachusetts Environmental Policy Act (MEPA), G. L. c. 30, §§ 61-62H, in determining that no environmental impact report (EIR) was required for a mixed use commercial development project proposed by the defendant, Gloucester Landing Associates, to be located on property owned by the defendant, Gloucester Redevelopment Authority. The com-plaint was dismissed in the Superior Court, and the plaintiffs appealed to the Appeals Court. We transferred the case to this court on our own motion, and we now affirm the Superior Court judgment.

General Laws c. 30, § 62H (1986 ed.), provides in part: "An agency or person intending to commence an action or proceeding alleging an improper determination of whether a project requires the preparation of an environmental impact report under section sixty-two A, shall first provide notice of intention to commence such action or proceeding within sixty days of issuance of notice of such determination." It is undis-puted that the plaintiffs provided notice of their intention to commence this action more than sixty days after the secretary issued the developer a certificate stating that no EIR was re-quired. However, it also is undisputed that the plaintiffs pro-vided that notice less than sixty days after the Secretary had published notice of his determination in the Environmental Monitor, a bimonthly publication of the Secretary's office. The only question argued in the Superior Court, and initially argued here, was whether the sixty-day notice period com-menced with the issuance of the certificate, in which case the notice would have been too late, or commenced later when the notice was published in the Environmental Monitor. In the latter case, the notice would have been timely. The motion judge agreed with the developer's contention that the limitations period commenced with the Secretary's issuance of a certificate of his determination. Therefore, he allowed the developer's motion to dismiss.

On appeal, this court was unwilling to assume, as the parties had, that, if the notice requirements of c. 30, § 62H, are met,

members of the public have a right to judicial review of the Secretary's determination that no EIR is necessary. Accordingly, we ordered further briefs to assist us in resolving that critical question. The question is jurisdictional. Does the Superior Court have subject matter jurisdiction of an action brought by ten or more citizens challenging a determination by the Secretary that no EIR is necessary? *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 644-645 (1974). Of course, in the absence of such jurisdiction, further inquiry in this case with respect to the notice provisions of G. L. c. 30, § 62H, would be inappropriate.

We phrased the issues for supplemental briefing as follows: "1. Does the Superior Court have subject matter jurisdiction of an action by ten citizens challenging the Secretary's determination that no Environmental Impact Report (EIR) is required? Is such a determination reviewable by the Superior Court? 2. Does the sixty day period for filing a notice of intention to commence suit (NOI) apply to challenges to the Secretary's determination that an EIR is *not* required?" Our questions invited the parties to discuss whether the Superior Court had jurisdiction either on the basis of G. L. c. 214, § 7A (1986 ed.), which provides for actions by ten persons domiciled within the Commonwealth in certain circumstances, or on any other basis. In their supplemental brief, the plaintiffs' argument in support of jurisdiction focuses entirely on G. L. c. 214, § 7A, G. L. c. 30, § 62H, regulations promulgated by the Secretary, and the Commonwealth's environmental policy.

Neither G. L. c. 30, § 62H, nor the Secretary's regulations confer jurisdiction on the Superior Court. Section 62H does not purport to grant jurisdiction. It simply provides, with respect to actions over which a court has jurisdiction from another source, that such actions must be commenced within a certain period following specified events. It is essentially a statute of limitations. Furthermore, although it is clear from regulations promulgated by the Secretary, as well as from the Secretary's position in this appeal, that he believes that his determinations that no EIR is required are subject to judicial review, the Secretary cannot confer jurisdiction on the courts by regulation,

and his opinion with respect to the existence of jurisdiction is neither controlling nor entitled to special weight. The Secretary's expertise with respect to environmental matters does not extend to the question whether, under Massachusetts law, his determinations are subject to judicial review. The question of jurisdiction in this case must be resolved by this court's construction of G. L. c. 214, § 7A, as inserted by St. 1974, c. 1114, § 62. See *Babson* v. *Boston Rent Control Adm'r*, 371 Mass. 404, 405 (1976);. *Emery Mining Corp.* v. *Secretary of Labor*, 744 F.2d 1411, 1416 (10th Cir. 1984); *Edwards* v. *Califano*, 619 F.2d 865, 869 (10th Cir. 1980).

General Laws c. 214, § 7A, provides in relevant part as follows: "The superior court for the county in which damage to the environment is occurring or is about to occur may, upon a civil action in which equitable or declaratory relief is sought in which not less than ten persons domiciled within the commonwealth are joined as plaintiffs . . . determine whether such damage is occurring or is about to occur and may, before the final determination of the action, restrain the person causing or about to cause such damage; provided, however, that the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment."

In *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639 (1974), a case heavily relied on by the plaintiffs and the Secretary, this court construed G. L. c. 214, § 10A (repealed), the predecessor of c. 214, § 7A, and like it in all material respects. The only violations alleged were that the Authority failed to comply with certain procedural steps required by statute and regulation. Nevertheless, this court held that "a petition under § 10A will lie to enforce the procedural as well as the prohibitory provisions of the Department's [of Public Health] regulations." *Id.* at 646-647. We reasoned that the purpose of MEPA was to protect the environment, and that, therefore, an allegation of a violation of MEPA or a regulation pursuant to MEPA qualified under § 10A as a claim that "damage to the environment is occurring or is about to occur." We

continue to subscribe to that principle. Therefore, if the plaintiffs in this case were alleging, as did the plaintiff in *Boston* v. *Massachusetts Port Auth.*, *supra*, that a developer or agency proposing a project failed to comply with the procedural requirement of a statute or regulation designed to protect the environment, the Superior Court would have subject matter jurisdiction under G. L. c. 214, § 7A.

The plaintiffs here, however, do not allege that the developer or agency proposing a project has failed to comply with MEPA or a regulation promulgated pursuant to MEPA. Indeed, the plaintiffs do claim a violation of MEPA, but they identify that violation as the failure of the Secretary to require an EIR. The claim on appeal is that the Secretary, who is the public official charged with administering the Commonwealth's environmental protection scheme, see G. L. c. 21A, and who, under G. L. c. 30, § 62A, determines whether an EIR is required, may be guilty of a violation of MEPA by determining that no EIR is necessary. That is a quite different contention from a contention that a proponent of a project has failed to comply with applicable regulations or statutory directives.

The contention here is also unlike the contention made by the plaintiff in *Secretary of Envtl. Affairs* v. *Massachusetts Port Auth.*, 366 Mass. 755 (1975). In that case, this court agreed with the plaintiff that the defendant's failure to file an EIR violated G. L. c. 30, § 62. But, at that time, c. 30, § 62, required an authority, such as the defendant in that case, to file an EIR when its proposed project "may cause damage to the environment." See G. L. c. 30, § 62, as amended by St. 1974, c. 257, § 1. No "violation" by the Secretary was alleged. *Boston* v. *Massachusetts Port Auth.*, *supra*, and *Secretary of Envtl. Affairs* v. *Massachusetts Port Auth.*, *supra*, are inapposite to the present controversy.

The Legislature substantially revised MEPA in 1977. See St. 1977, c. 947. In that act, after declaring its purpose to be "to immediately expedite environmental approvals and rules and regulations thereof under the laws regulating environmental policy in the commonwealth," the Legislature inserted into G. L. c. 30 a new § 62A (the current § 62A), which provides

in part that the Secretary "shall issue a certificate stating whether an environmental impact report is required." As a result of St. 1977, c. 947, a proponent of a project violates the law by failing to file an EIR only if the Secretary determines that one is required. As we have noted, no claim is made here that the proponent violated the law.

Neither the Secretary nor the plaintiffs point to any specific provision in MEPA or in any other statute as being susceptible of violation by the Secretary's incorrect, or even arbitrary, determination that an EIR is not required. There is no such provision, and it would be an unwarranted stretch of statutory language, far in excess of the broad construction adopted by the court in *Boston* v. *Massachusetts Port Auth.*, *supra*, for this court to conclude that the Secretary's determination that no EIR is required may qualify as "damage caused or about to be caused" in "violation" of an environmental statute. Furthermore, the provision in G. L. c. 214, § 7A, that the Superior Court may "before the final determination of the action, restrain the person causing or about to cause such damage," suggests in the c. 30 context that the Legislature contemplated only the agency or authority or private person proposing a project, and not the public official who administers the statutory scheme, as "the person causing or about to cause" environmental damage. See *Warren* v. *Hazardous Waste Facility Site Safety Council*, 392 Mass. 107, 118 (1984) ("It is clear that the Legislature did not intend by G. L. c. 214, § 7A, to authorize injunctive relief against an agency of the Commonwealth that was created by the Legislature to monitor and implement the process for siting hazardous waste facilities"); *Aertsen* v. *Landrieu*, 488 F. Supp. 314, 323 (D. Mass.), aff'd on other grounds, 637 F.2d 12 (1st Cir. 1980).

The plaintiffs, supported by the Secretary, argue that "[i]n addition to the plain language of the statute and legislative intent thereof, sound environmental policy dictates that a Secretary's improper determination not to require the preparation of an EIR be actionable. Any other result would thwart MEPA in attaining thorough environmental review prior to a project's implementation and minimizing environmental damage." Of

course, the principal source for discovery of legislative intent is the language of the statute. Furthermore, contrary to the plaintiffs' contention, sound environmental policy does not necessarily require the availability of judicial review of the Secretary's determination that no EIR is required. Sound environmental policy does not even permit, much less require, environmental protection to the exclusion of all other legitimate State concerns. A policy that places final determination as to the necessity of an EIR in the hands of a disinterested public official with expertise in environmental matters, shared by his or her staff but not ordinarily shared by judges, cannot be characterized as unsound. This is particularly true in light of the potential unfairness and social and economic loss that may result from the delay inherent in litigation. Substantial delay due to litigation is inevitable regardless of the standard of judicial review that may be applied. The declared purpose of the Legislature in enacting St. 1977, c. 947, "to immediately expedite environmental approvals . . . under the laws regulating environmental policy in the commonwealth" affirms the undesirability of delay. It may have been sound policy for the Legislature to authorize judicial review of determinations that no EIR would be required when those determinations were made by interested, and perhaps inexpert, parties, despite the ensuing delay, as was the situation before the enactment of St. 1977, c. 947. However, it cannot reasonably be said that the failure to make judicial review available when those determinations are made by the Secretary is unsound.

It is true, as the plaintiffs argue, that in *Boston Preservation Alliance, Inc.* v. *Secretary of Envtl. Affairs*, 396 Mass. 489 (1986), this court considered the merits on appeal of a challenge in the Superior Court to the limitation the Secretary had placed on the scope of a required EIR. The plaintiffs argue that it would make no sense for the Superior Court to have subject matter jurisdiction over a challenge to the Secretary's determination concerning the required scope of an EIR, but not to have jurisdiction over a challenge to his determination that no EIR whatsoever is necessary. There is logic in the plaintiffs' contention, but the contention incorrectly assumes that the jur-

isdictional argument was raised in the *Boston Preservation Alliance, Inc.* case. The court in that case did not hold that a ten-domiciliary action to challenge the adequacy of the scope of an EIR is within the jurisdiction of the Superior Court. There is no suggestion in the court's opinion that the court addressed that issue. We address it in this case for the first time.

In her dissenting opinion, *post* at 621-622, Justice Abrams identifies certain language in G. L. c. 30, § 62H, which makes little sense if the Secretary's determination that no EIR is necessary is unreviewable in court. Even so, and if we grant the validity of that observation, it does not follow that judicial review is available. Such review is not available unless authorized by statute, and no statute authorizes it. Chapter 30, § 62H, clearly does not itself purport to create such jurisdiction. At most, it may reasonably be said that § 62H contains language which implies a legislative assumption that judicial review is available from another source. However, such an assumption is not the equivalent of a jurisdictional grant.

Moreover, it is far from clear that, in enacting § 62H, the Legislature did assume that the Secretary's decisions not to require an EIR are reviewable. Although § 62H contains some language suggesting such an assumption, other language suggests the opposite. For instance, the second paragraph, dealing with time limitations for the commencement of actions, provides: "Any action or proceeding alleging an improper determination *that* a project requires the preparation of an environmental impact report" (emphasis added) shall commence within specified periods. There is no additional language specifying time limits for actions alleging an improper determination that an EIR is *not* required. Furthermore, although c. 30, § 62C, expressly requires the Secretary to give public notice of filings and reports, there is no provision in c. 30 expressly requiring public notice of a determination that no EIR is required. One might reasonably expect that public notice of such a determination would be expressly required if the public were thought by the Legislature to have a right to judicial review of such a decision if exercised in timely fashion.

On the basis of the foregoing reasoning, we conclude that the correct judgment was entered in the Superior Court. It is unnecessary for us to consider, therefore, whether the plaintiffs' action, focused on a proposed project in Gloucester, County of Essex, but commenced in Suffolk County, must fail because of the provision in G. L. c. 214, § 7A, that "[t]he superior court for the county in which damage to the environment is occurring or is about to occur may [take specified action]." We need not decide whether that requirement is one of jurisdiction or merely of venue.

*Judgment affirmed.*

ABRAMS, J. (dissenting). I dissent from the court's conclusion that the Superior Court lacks subject matter jurisdiction over the plaintiffs' complaint and request for judicial review. I also conclude that the appeal is timely pursuant to G. L. c. 30, § 62H. I therefore would reverse the judgment and remand to the Superior Court for a determination on the merits.

1. *The statutory framework.* "When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute; otherwise the different sections of the same statute might be so construed as to be repugnant, and the intention of the legislature might be defeated. And if, upon examination, the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act." *Holbrook* v. *Holbrook*, 1 Pick. 248, 250 (1823). Looking at the entire statutory framework, see *Negron* v. *Gordon*, 373 Mass. 199, 201-202 (1977), I conclude that the Secretary's determination is reviewable in the Superior Court.

a. *The MEPA Process.* MEPA requires public agencies and, in some circumstances, private parties,[1] to prepare EIRs analyz-

---

[1] A private person, such as the defendant Gloucester Landing Associates in this case, only becomes subject to MEPA if that person is applying to

ing the environmental effects of certain projects they undertake. The threshold determination whether a project requires an EIR is made by the Secretary of Environmental Affairs, who bases the decision on an environmental notification form (ENF) describing the project, submitted by the agency or person proposing the project, and subsequent consultation with the project proponent. G. L. c. 30, § 62A. By regulation, the Secretary also normally schedules a "public consultation session to review the project," 301 Code Mass. Regs. § 11.25 (1) (1987), and "receive[s] into the record written comments" from any person or agency. 301 Code Mass. Regs. § 11.05 (2) (1987).[2] The Secretary must issue public notice of an ENF within two weeks of receiving it, and must determine whether the project requires an EIR within thirty days after issuance of notice of receipt of the ENF. G. L. c. 30, §§ 62A, 62C.

MEPA does not state directly the standard for determining which projects require EIRs. However, G. L. c. 30, § 62C, makes clear that an EIR is required for any project "which may cause damage to the environment."[3] *Secretary of Envtl. Affairs* v. *Massachusetts Port Auth.*, 366 Mass. 755, 768-770, 772 (1975) (interpreting identical provision in former § 62). See *Marlow* v. *New Bedford*, 369 Mass. 501, 502 (1976). MEPA defines "damage to the environment" to include "any destruction, damage or impairment, actual or probable," but exclude "insignificant damage." G. L. c. 30, § 61.

---

a public agency for a permit or for financial assistance for a project. G. L. c. 30, §§ 62A, 62B. "Person" is defined to include "a private person, firm or corporation, or any governmental entity which is not an agency." G. L. c. 30, § 62.

[2] Public comment also was invited under the predecessor regulation. 301 Code Mass. Regs. § 10.04(a) (1979).

[3] The statute provides in relevant part: "No agency shall undertake a project which is not exempted by the provisions of any law and *which may cause damage to the environment* or grant a permit or financial assistance for such a project until sixty days after the secretary of environmental affairs issues . . . notice [of the availability of the EIR]" (emphasis added). G. L. c. 30, § 62C.

If an EIR is required, the agency or person proposing the project must prepare the EIR and submit it to the Secretary who, twice each month, must "issue [public] notice . . . of the availability of all reports received during the preceding half month." G. L. c. 30, § 62C. After issuance of the public notice, a sixty-day waiting period follows during which no agency may begin work on or grant a permit or financial assistance for the project. Public review of and comment on the EIR is invited during the first half of the waiting period. *Id.* After the time for public comment, the Secretary issues a final statement whether the EIR "adequately and properly complies with the provisions of [§§ 62-62H]." *Id.* After the sixty-day waiting period, the MEPA process is complete.

Pursuant to § 62C, no agency may issue a permit or grant financial assistance for a private project until either (a) the MEPA process has been completed, or (b) the Secretary determines the project requires no EIR. If the Secretary makes a negative EIR determination, the statute mandates no subsequent administrative action. In such a case, the agency proposing the project may begin work or, in the case of a private project, the agency may issue the permits or financial assistance sought for the project. See 301 Code Mass. Regs. § 11.01(5) (1987).

b. *Judicial review of EIR determinations.* Section 62H governs actions challenging the Secretary's EIR determinations. The second paragraph of § 62H provides that such actions "shall commence *no later than thirty days following the first issuance of a permit or grant of financial assistance by an agency* or no later than sixty days after issuance of notice of such determination, whichever occurs later, for a private project . . ." (emphasis supplied). Permits can be issued only after (a) the Secretary determines that no EIR is required, or (b) the EIR already has been filed. See G. L. c. 30, § 62C. Because a project proponent who already has submitted an EIR has no reason to challenge the Secretary's determination, the statute must contemplate actions challenging determinations where EIRs are not required; otherwise, the language in § 62H providing for challenges *after* issuance of permits and grants of financial assistance becomes meaningless surplusage. "[N]o

provision of a legislative enactment should be treated as super-fluous." *Commonwealth* v. *Neiman*, 396 Mass. 754, 758 (1986), and cases cited.

The fact that the second paragraph of § 62H refers to actions "alleging an improper determination *that* a project requires [an EIR]" (emphasis added) does not require the result reached by the court. Reading the word "that" so literally as to restrict application of the statute to actions challenging decisions *requiring* EIRs renders the entire clause governing commencement of actions *after* the issuance of permits superfluous. Such a reading also is inconsistent with the first paragraph of § 62H, which calls for notice of actions "alleging an improper determination *whether* a project requires [an EIR]" (emphasis added). "The words of a statute will not be read literally if to do so would be inconsistent with legislative intent." *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 592 (1984). *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982). *Lexington* v. *Bedford*, 378 Mass. 562 (1979). *Holbrook* v. *Holbrook*, 1 Pick. 248 (1823). Furthermore, the explicit provision in § 62H, making the time periods in that section applicable "in lieu of the notice and waiting period required by [§ 7A]," becomes meaningless if citizen groups cannot challenge negative EIR determinations.[4]

---

[4] Because I conclude that jurisdiction is proper in this case under § 7A, see *infra*, I do not reach the issue whether § 62H also provides an independent basis for jurisdiction. I note, however, that if § 62H is interpreted, as the court suggests, solely as a statute of limitations and not as a provision allowing for judicial review of the Secretary's EIR determinations, then it is unclear under what provision of law a person *required* by the Secretary to prepare an EIR may challenge the Secretary's determination. It is doubtful that the Legislature intended such persons to have no right to judicial review, or that they be limited to bringing constitutional due process claims when they are aggrieved by EIR determinations. If today's decision is read to suggest that EIR determinations are reviewable under G. L. c. 30A, then it is unclear why the plaintiffs in the present case may not maintain their present action; any objection based on a lack of "standing" is overcome by § 7A, which confers on citizen groups the right to bring actions where damage to the environment is involved. Conversely, if, as the court suggests, the Secretary's EIR determinations are unreviewable, then all the painstakingly detailed provisions in § 62H governing judicial review must be viewed as meaningless. The court's interpretation of these provisions as a mere

The 1977 amendments to MEPA do not reveal a legislative purpose to cut off judicial review of EIR determinations. Prior to 1977, negative EIR determinations were subject to judicial review. See, e.g., *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639 (1974). "Had the Legislature intended . . . to [eliminate the court's] review, it could have expressed the limitation in the statute. It did not do so." *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 586 (1981). The court's conclusion that the amendments were intended to preclude judicial review of negative EIR determinations finds no support in the language of the statute or in principles of statutory construction. It is based on a precarious combination of gaps and silences in the statutory framework, and imports a meaning alien to the actual provisions of the legislation.[5] The court's conclusion ignores the history of judicial review of EIR determinations and the strong legal presumption in favor of judicial review of administrative decisions. See *Citizens to Preserve Overton Park Inc.* v. *Volpe*, 401 U.S. 402, 410 (1971) (judicial review of agency decisions

---

"assumption" by the Legislature that judicial review is available is unduly grudging and rigid. In my view, these provisions, enacted into law, constitute an expression of legislative *intent* that EIR determinations be reviewable; it is the duty of this court to give effect to the intent of the Legislature.

[5] The purpose of the 1977 amendments, which was "to immediately expedite environmental approvals . . . under the laws regulating environmental policy in the commonwealth," Statute 1977, c. 947, was accomplished by several statutory provisions, none of which relate to eliminating judicial review of EIR determinations. The most basic change was to consolidate in the Secretary's office the EIR determination process, which, prior to 1977, had been spread out among the individual agencies proposing or funding projects. To assure rapid decisionmaking, the Legislature required the Secretary to render determinations within thirty days after publishing notice of receipt of a project proposal. *Id.* To expedite the EIR process further, the Legislature directed the Secretary to establish "general and special categories of projects and permits which shall or shall not require environmental impact records," G. L. c. 30, § 62E, which the Secretary has done. See 301 Code Mass. Regs. §§ 11.03, 11.25-11.27 (1987). Nowhere did the Legislature eliminate judicial review. Instead, it included in the amendments detailed provisions governing judicial review. See G. L. c. 30, § 62H. The conclusion that eliminating judicial review of EIR determinations constitutes "sound environmental policy" is the conclusion of the court, not the Legislature, and usurps the legislative function.

precluded only on showing of "clear and convincing evidence" of a legislative intent to restrict access to judicial review). The court should not infer from legislative silence an intention to effect radical alterations in existing law. See *International Org. of Masters* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 817 (1984); *Dexter* v. *Commissioner of Corps. & Taxation*, 316 Mass. 31, 53 (1944).

I note, too, that no provision of the 1977 amendments expressly grants the Secretary unreviewable discretion to determine which projects require EIRs.[6] On the contrary, as noted *supra*, there is an articulated legal standard by which to determine the need for an EIR, and "it is evident that an EIR is required whenever there is a potential for damage to the environment which may be characterized as 'not . . . insignificant.' " *Secretary of Envtl. Affairs* v. *Massachusetts Port Auth.*, *supra* at 769. The operative provision of MEPA that sets forth this standard appeared in the original enactment of MEPA, and was preserved unaltered in the 1977 amendments. See G. L. c. 30, § 62C. The preservation of this language raises a legal presumption that the Legislature intended it to carry the same meaning as before. *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 240-241 (1982), and cases cited.

2. *Jurisdiction under G. L. c. 214, § 7A.* For the Superior Court to have jurisdiction under G. L. c. 214, § 7A,[7] "there

---

[6] Even if the Secretary did have discretion to determine the need for EIRs, such discretion would not be unbounded as the court today suggests; "a court would not be excluded if the [Secretary] appeared to have been actuated by clearly inapposite or unreasonable considerations." *West Broadway Task Force, Inc.* v. *Commissioner of Dep't of Community Affairs*, 363 Mass. 745, 751 (1973). The result of the court's opinion may be to encourage citizens in future actions to allege that the Secretary was motivated by improper considerations; such a result can only serve to erode confidence in government.

[7] General Laws c. 214, § 7A, provides in relevant part: "The superior court for the county in which damage to the environment is occurring or is about to occur may, upon a civil action in which equitable or declaratory relief is sought in which not less than ten persons domiciled within the commonwealth are joined as plaintiffs, . . . determine whether such damage

must be an allegation that 'damage to the environment is occurring or is about to occur,' and it must further be alleged that such damage 'constitutes a violation of a statute . . . or regulation the major purpose of which is to prevent or minimize damage to the environment.'" *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 645 (1974) (interpreting former § 10A). As to the first condition, an improper determination that a project requires no EIR under MEPA constitutes "damage to the environment." *Id.* at 645-647. See also *Boston Preservation Alliance, Inc.* v. *Secretary of Envtl. Affairs*, 396 Mass. 489 (1986) (action under § 7A challenging Secretary's decision limiting scope of EIR). Cf. *Massachusetts* v. *Watt*, 716 F.2d 946, 951-953 (1st Cir. 1983). As to the second condition, the plaintiffs allege errors of law and abuse of discretion committed by the Secretary in determining that the proposed project is not one "which may cause damage to the environment." G. L. c. 30, § 62C. Thus, the prerequisites for jurisdiction in the Superior Court under § 7A have been met.

Neither of the cases cited by the court, *ante* at 616, supports the conclusion that jurisdiction fails in this case under § 7A. In *Warren* v. *Hazardous Waste Facility Site Safety Council*, 392 Mass. 107 (1984), the court held that a feasibility study prepared by the Hazardous Waste Facility Site Safety Council was not a "final decision" by that administrative agency and thus not subject to judicial review. *Id.* at 117-118. No immediate consequences or action need follow such a study. *Id.* Applying the analysis in *Warren*, it is clear that, unlike a preliminary feasibility study, the Secretary's determination whether a project requires an EIR is a "final decision" which has immediate consequences for project proponents, as well as the public — a proponent may be required to prepare a costly report or, conversely, the public may be deprived of a thorough environmental analysis of a major project. The finality

is occurring or is about to occur and may, before the final determination of the action, restrain the person causing or about to cause such damage; provided, however, that the damage caused or about to be caused . . . constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment."

of an order is determined "on the footing of its substance."
*Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.*,
394 Mass. 671, 677 (1985). The Secretary's determination
clearly is a final decision subject to judicial review.[8]

*Aertsen* v. *Landrieu*, 488 F. Supp. 314 (D. Mass.), aff'd
on other grounds, 637 F.2d 12 (1st Cir. 1980), is equally
inapposite. In *Aertsen*, the only issue of State law was whether
the project proponents had complied with the procedural re-
quirements imposed on them by MEPA. The Federal District
Court judge's statement that the Secretary's negative EIR de-
termination was "a complete answer to plaintiffs' contentions
under MEPA," *Aertsen* v. *Landrieu, supra* at 323, does not
refer to the merits of the Secretary's determination; instead, it
indicates only that issuance of the Secretary's determination
stood as conclusive evidence of the proponents' compliance
with the procedural requirements of MEPA.[9]

Further, the narrow interpretation of § 7A adopted today
was rejected in *Boston* v. *Massachusetts Port Auth., supra* at
646, where this court wrote: "The legislative intent underlying
[§ 7A] is broadly stated in the title under which it was enacted:
'An Act establishing a cause of action in behalf of certain
persons and political subdivisions for the purpose of protecting
the natural resources and environment of the commonwealth.'
St. 1971, c. 732. In submitting the proposed legislation permit-
ting environmental suits to be brought by citizens, the Governor
indicated that his intention was to permit 'the citizen to join
in the enforcement of the battery of anti-pollution laws we
have passed in recent years.' 1971 House Doc. No. 5023. We
believe that these broad statements of purpose are incompatible
with a narrow, technical interpretation of [§ 7A] which would

[8] By including in G. L. c. 30, § 62H, provisions for judicial review of
the Secretary's determination, the Legislature clearly intended the determi-
nation to be "final." See note 4, *supra.*

[9] Before concluding that the plaintiffs' allegations were unfounded, the
judge in fact considered the merits of the Secretary's determination. *Aertsen,
supra* at 323. Clearly, a Federal court decision which considers the merits
of a negative EIR determination is not a decision which bars judicial review
of such determinations in the Superior Court.

limit the operation of the statute to the enforcement of only prohibitory environmental laws and regulations." The court today fails to follow its own words.

Finally, the court today ignores its own recent precedent allowing citizen groups to challenge determinations as to the scope of EIRs under § 7A. *Boston Preservation Alliance, Inc.* v. *Secretary of Envtl. Affairs*, 396 Mass. 489 (1986). The court asserts that *Boston Preservation Alliance* is inapposite because subject matter jurisdiction under § 7A was not argued in that case. The fact that the parties did not raise the issue of jurisdiction in *Boston Preservation Alliance* is irrelevant. The parties in the present action also did not raise jurisdiction as an issue. We raised it in this court sua sponte, as we must, where we question the basis on which parties are before us. *Nature Church* v. *Assessors of Belchertown*, 384 Mass. 811, 812 (1981). *MacDonald* v. *Carr*, 355 Mass. 120, 122 (1969). *Commissioner of Corps. & Taxation* v. *Chilton Club*, 318 Mass. 285, 287 (1945). The fact that the court did not raise the issue of jurisdiction in *Boston Preservation Alliance* in my view indicates that the court concluded that jurisdiction was proper. The court today sub silentio overrules *Boston Preservation Alliance*, a case decided only two years ago. By ignoring its own recent precedent, the court violates a central tenet of principled jurisprudence.

3. *Timeliness of notice*. The original issue presented in this appeal was whether the sixty-day notice period in the first paragraph of § 62H[10] began on the date the Secretary issued a certificate determining that no EIR was required under § 62A, or the date on which notice of the Secretary's determination was published in the Environmental Monitor. In 1979, the Secretary promulgated a regulation requiring publication in the Environmental Monitor of all determinations regarding the need

---

[10] General Laws c. 30, § 62H, provides in relevant part: "An agency or person intending to commence an action or proceeding alleging an improper determination of whether a project requires the preparation of an environmental impact report under section sixty-two A, shall first provide notice [to the Secretary] of intention to commence such action or proceeding *within sixty days of issuance of notice of such determination*" (emphasis added).

for EIRs and providing: "The date of publication of the Monitor shall be the date upon which various periods of time for review specified in these regulations shall commence." 301 Code Mass. Regs. § 10.14(1) (1979).[11] The periods specified in the regulations include the periods described in G. L. c. 30, §§ 62A, 62H.

A person challenging a regulation must prove in the judicial proceeding that the regulation is illegal, arbitrary or capricious. E.g., *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 293 (1979). No such showing has been made. Furthermore, the Secretary's interpretation of the statute is supported strongly by the Legislature's use of the words "of notice" in § 62H. If the Legislature intended the limitations period to run from the date of the Secretary's determination, it could have omitted the words "of notice" from § 62H. Reading those words to refer to the issuance of the certificate under § 62A produces the same result as omitting them. All words of a statute must be given meaning whenever possible. *Commonwealth* v. *Neiman*, 396 Mass. 754, 758 (1986).

Reading the statutory framework as a coherent whole, the Legislature clearly intended to permit citizen groups to challenge the Secretary's EIR determinations. It is inconsistent with this basic purpose to conclude that the limitation periods specified in § 62H begin to run against interested members of the public before they receive notice of the Secretary's determination. In my view, "issuance of notice" occurs when the Secretary's determination is published in the Environmental Monitor.[12] The plaintiffs gave timely notice of appeal to the Secretary.

---

[11] The Secretary's regulations were revised in 1987. The provision referred to in the text has been carried over into the new regulations at 301 Code Mass. Regs. § 11.19(1) (1987).

[12] The fact that § 62C, which requires publication of notice of the availability of ENFs and EIRs, is silent as to "issuance of notice" of determinations of need for EIRs does not exclude a legislative purpose in MEPA as a whole that notice of such determinations be given by way of publication. "In so large a legislative enterprise, there are likely to be casual overstatements and understatements, half-answers, and gaps in the statutory provisions. As practice develops and the difficulties are revealed, the courts are

4. *Conclusion.* Precluding judicial review in this case undermines the manifested purpose of the statutory framework. Moreover, precluding judicial review on the basis of the Secretary's "expertise" means that "[a]dministrative expertise [will] . . . be on its way to becoming 'a monster which rules with no practical limits on its discretion.' " *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 310 (1981). *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 566-567 (1985) (Lynch, J., dissenting) and sources cited. Today's decision takes an unacceptable "step toward agency nonaccountability and carte blanche," *id.*, and casts a shadow of uncertainty over our prior decisions on statutory construction. I dissent.

---

called on to interweave the statute with decisions answering the difficulties and composing, as far as feasible and reasonable, an harmonious structure faithful to the basic designs and purposes of the Legislature." *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 345 (1978). See, e.g., *Intriligator* v. *Boston*, 395 Mass. 489, 491-492 (1985) (tort claims act); *Commonwealth* v. *Curtin*, 386 Mass. 587, 589 (1982) (motor vehicle statutes); *Commonwealth* v. *Germano*, 379 Mass. 268, 273 (1979) (court reorganization).