Murphy, J.
The plaintiffs bring this action challenging the determination by defendant Trudy Coxe, as Secretary of the Executive Office of Environmental Affairs (“Secretary”), that defendant Northfield Solid Waste Recovery, Inc. (“NSWR”) was not required to prepare a Supplemental Environmental Impact Report regarding alleged changes in its project proposal. The plaintiffs further ask the court to enjoin construction of the proposed solid waste recovery facility. Both defendants now move for summary judgment. For the reasons set forth below, the motions for summary judgment of both defendants are allowed.
BACKGROUND
NSWR proposes to construct a solid waste and sewage sludge recycling and composting facility in Northfield, Mass. Pursuant to the review process required under the Massachusetts Environmental Policy Act (“MEPA”), G.L.c. 30, §§61-62H, NSWR submitted an Environmental Notification Form to the Executive Office of Environmental Affairs (“EOEA”) on July 22, 1992. On September 9, 1992, the Secretary issued a certificate of her determination that the proposed project required preparation of an Environmental Impact Report (“EIR”). On or about April 30, 1993, NSWR submitted a Draft EIR, availability of which was noticed in the Environmental Monitor on May 25, 1993. After review of the EIR and consideration of public comment, the Secretary issued a certificate of compliance on the Draft EIR on July 15, 1993. On or about September 6, 1993, NSWR submitted a Final EIR, which was noticed in the Environmental Monitor on September 24, 1993. On November 1, 1993, the Secretary certified that the Final EIR did not adequately and properly comply with MEPA and required preparation and submission of a Supplemental Final EIR. NSWR submitted its Supplemental Final EIR on or about December 13, 1993. On January 28, 1994, the Secretary certified that the Supplemental Final EIR complied with MEPA. In the certificate, the Secretary noted that
Although a significant amount of work and detail is still required of the proponent to attain required state permits, I am comfortable that the MEPA process has run its course and has afforded substantial opportunities for public comment. Therefore, with my finding that the FEIR is adequate and that it has included an identification of the project’s environmental impacts and how the same can be minimized and mitigated, the proponent is authorized to move forward to state agency permitting. This means the proponent is now subject to two other sets of environmental reviews: the site assignment process, administered jointly by the Northfield Board of Health, DEP and Department of Public Health; and the solid waste management facility (construction) permitting process at DEP.
I specifically require that Section 61 findings be submitted to MEPA for all state agency permits issued for this project. These findings must conclude that all feasible measures have been taken to avoid or minimize damage to the environment. . .
I note that the proponent will be required to file a Notice of Project Change (301 CMR 11.17) for any tonnage above 200 TPD as well as for any significant changes to the project’s proposed design or operation.
In May of 1994, NSWR was required to submit a Notice of Project Change regarding modification of the site layout. On June 9, 1994, the Secretary certified that the changes did not require preparation of a Supplemental EIR.
On January 9, 1995, the Secretary issued a Certificate on the Notice of Project Change which is the subject matter of this action. The Secretary determined that preparation of a supplemental EIR was not *621 required after investigation of the following matters of concern:
conflicting information about the proposed, short and long term capacity of the facility, and the possibility of project segmentation contrary to the provisions of MEPA;
lack of clarity about the sources of water and fuel for the facility;
the status of an on-site disposal area for railroad ties;
proximity of one or more water supply wells; and
proposed state financial assistance from the Massachusetts Industrial Finance Agency (MIFA).
The Secretary determined that only the MIFA financing constituted a “project change” under MEPA. She noted the confusion around the question of capacity and that NSWR had expressed a desire to eventually operate at higher capacity. Based upon her confirmation of the current intention of NSWR, and the 200 ton per day limit on approvals from DEP and the Zoning Board of Appeals, the Secretary accepted “the representation that the facility’s capacity will not expand beyond what was reviewed in the MEPA process.” As to the railroad tie disposal question, resolution was left to the Department of Environmental Protection (“DEP”), as part of its construction permitting process. In reference to concerns about drinking water sources, the Secretary indicated that DEP had confirmed that
the facility as proposed is not located in or over a designated potential water supply (aquifer), a DEP-approved Zone II water supply protection area or an Interim Wellhead Protection Area (IWPA) for the supply well of the nearby regional school.
She also asked that “DEP take into consideration relevant new information developed by other interested parties and their consultants.”
On March 8, 1995, the plaintiffs filed this action, challenging the validity of the Certificate on the Notice of Project Change dated January 9, 1995. They raise that challenge under four counts: (I) G.L.c. 249, §4— Certiorari; (II) G.L.c. 214, §7A — Damage to the Environment; (III) G.L.c. 231, §1 Declaratory Judgment; and (IV) G.L.c. 30, §§61-62H — MEPA.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c); 365 Mass. 824 (1974). The moving party bears'the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A court will grant summary judgment to the party entitled to judgment as a matter of law if both parties have moved for summary judgment and “there is no real dispute [concerning] the salient facts” or if a case only involves a question of law. Cassesso v. Commissioner of Correction, supra.
The plaintiffs, through each of the four counts, suggest possible alternative sources of jurisdiction, all of which are challenged by the defendants. It is well-established that MEPA, through G.L.c. 30, §62H, “does not purport to grant jurisdiction" on the Superior Court, but rather provides for a limitations period on the commencement of actions. Cummings v. Secretary of Envtl. Affairs, 402 Mass. 611, 613 (1988); Town of Walpole v. Secretary of the Executive Office of Envtl. Affairs, 405 Mass. 67, 70 (1989).
General Laws c. 214, §7A provides for civil actions in Superior Court to determine whether damage to the environment is occurring or is about to occur and to restrain persons causing such damage. As to the Secretary, the Supreme Judicial Court has held that the Superior Court lacks jurisdiction under c. 214, §7A to hear actions against the Secretary for actions taken as administrator of MEPA. Walpole, supra at 71; Cummings, supra at 616. As to NSWR, the project proponent, the court does have jurisdiction over a c. 214, §7A action which alleges, as does the instant matter, that the proponent has “failed to comply with the procedural requirement of a statute or regulation designed to protect the environment.” Id. at 614-15; Walpole, supra&t 70-71. The plaintiffs also argue for jurisdiction under the broad sweep of either certiorari, G.L.c. 249, §4, or declaratory judgment, G.L.c. 231A.
A requisite element for an action under G.L.c. 249, §4, is that the challenged decision transpire in a judicial or quasi judicial proceeding. E.g., Town of Walpole, supra at 72. The court in Walpole found that certiorari was not available where the agency determination to narrow the focus of its planning was “discretionary and require[d] no hearing.” Id. at 72-73 (citation omitted) (alteration in original). Here, the plaintiffs challenge the Secretary’s certification that a supplemental EIR was not required in response to a notice of a project change by NSWR. That determination is made in “consult[ation] [with] the proponent, agencies, and persons who previously participated in project review.” 301 Code Mass. Regs. §11.17 (1993). There is no provision for a hearing. The secretary’s determination was not a judicial or quasi judicial proceeding and, therefore, the court has no jurisdiction to hear an action pursuant to G.L.c. 249,. §4.
The legality of the actions of an administrative agency is open to challenge via an action for declaratory judgment, regardless of the nature of that action. Canney v. Municipal Court of the City of Boston, 368 Mass. 648, 654-55 (1975); see also Williams v. Secretary of the Executive Office of Human Services, 414 *622 Mass. 551, 567 n.10 (1993) (citation omitted). However, such an action must still satisfy the requisites of declaratory relief by showing (1) an actual controversy; (2) standing; (3) necessary parties have been joined; and (4) available administrative remedies have been exhausted. E.g., The Villages Dev’t Co., Inc. v. Secretary of the Executive Office of Envtl. Affairs, 410 Mass. 100, 109 (1991). The plaintiffs have not made the requisite showing of standing.
Standing has been defined as a “definite interest in the matters in contention in the sense that [the plaintiffs’] rights will be significantly affécted by a resolution of the contested point.” Bonan v. City of Boston, 398 Mass. 315, 320 (1986). To the extent that this action alleges statutory violations, the determination of whether a party is aggrieved requires examination of the statutory purpose. Holden v. Division of Water Pollution Control, 6 Mass.App.Ct. 423, 428 (1978). The plaintiffs allege violations of G.L.c. 30, §§61-62H (MEPA) and ofc. 214, §7A.They fail to show how resolution of this dispute in their favor would significantly affect their rights. Under MEPA, their rights regarding notice of project changes are to “consult” with the Secretary, as she may deem appropriate. 301 Code Mass. Regs. §11.17. They have never been denied this right and, in response to the plaintiffs’ expressions of concern, the Secretary made an investigation prior to her decision. Chapter 214, §7A provides for actions to prevent “damage to the environment [which] is occurring or is about to occur." Id. (emphasis added). The plaintiffs have not explained or offered evidence which allows for a reasonable inference that the Secretary’s determination that a Supplemental EIR was not required will lead to inevitable and imminent environmental damage. Any alleged environmental damage can only come about upon construction of the proposed plant. Filing and certification of the Final EIR is an initial, informational step in a comprehensive and protracted permitting process. The plaintiffs’ disagreement with the Secretary over the adequacy of the EIR is not a grievance which confers standing to pursue a declaratory judgment action against either the Secretary or NSWR.
Having determined that the court has jurisdiction over only NSWR, under G.L.c. 214, §7A, I proceed to the merits of that claim. In order to obtain relief under G.L.c. 214, §7A, the plaintiffs must prove that due to NSWR’s alleged violations of MEPA, “damage to the environment [is] either occurring or [is] ‘about to occur.’ ” Walpole, 405 Mass. at 71 (citation omitted). They cannot meet this burden.
The plaintiffs allege four principal violations of MEPA. Three of the alleged violations concern whether the proposed project impinges upon water supplies from an aquifer, may come within the protection area of a well which supplies a school, and fails to properly address the cleanup of a railroad tie disposal area. NSWR has no role in the determinations regarding the location and integrity of drinking water supplies or in the determination of proper environmental cleanup procedures. Therefore, any errors in these determinations cannot be attributed to NSWR and it cannot be held to have violated MEPA. Finally, and principally, the plaintiffs contend that NSWR has improperly deceived the Secretary as to its intentions for the proposed plant.
MEPA requires that proposed projects be considered in their entirety, so that review of “likely future expansions” is not evaded or deferred. 301 Code Mass. Regs. §11.16. The plaintiffs assert that NSWR plans to expand the proposed 200 ton per day plant to one of 1200 tons per day. Even if the court assumes this assertion to be true, the plaintiffs have not demonstrated how that allegedly concealed intention threatens imminent damage to the environment, as required under G.L.c. 214, §7A. The Executive Office of Environmental Affairs certified an EIR for a plant limited to 200 tons per day, MIFA will provide financial assistance for a 200 ton per day plant, and the Zoning Board of Appeals approved a plant limited to processing 200 tons per day. In order to act on any plan to expand, NSWR is subject to review and approval by at least these three bodies, along with others from which additional permits are required. It is simply not the case that NSWR could be causing or about to cause damage to the environment. The plaintiffs are not eligible for relief under c. 214, §7A.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of defendant Trudy Coxe, as she is Secretary of the Executive Office of Environmental Affairs, be ALLOWED and that the motion for summary judgment of defendant Northfield Solid Waste Recovery, Inc. be ALLOWED.

In conjunction with the motions for summary judgment, the parties also filed the following motions:
Defendant NSWR’s Motion to Strike
Plaintiffs’ Motion for Leave to File Additional Evidence
Defendant NSWR’s Motion to File Affidavit.
Because of today’s decision, the court need not rule on these motions.