Brassard, J.
This action is brought by the Harvard Alumni Architectural Review Committee and twenty-one individuals (the “plaintiffs”) against the Massachusetts Historical Commission (the “Commission”), the Massachusetts Architectural Access Board (the “Board”), and Harvard University (“Harvard”). The dispute among the parties arises from Harvard’s ongoing renovation of the building on its campus known as the Union Building/Burr Hall (“Union/Burr Hall”). The plaintiffs maintain that the renovation is destroying historically significant interior and exterior features of Union/Burr Hall, and contend that the Commission and the Board have violated their statutory obligations by allowing the renovations to take place. The plaintiffs request the issuance of a permanent injunction restraining Harvard from conducting the renovations. The case is before this Court on Harvard’s motion to dismiss or in the alternative for summary judgment' and the plaintiffs’ cross-motion for summary judgment. All parties agree that there are no material facts in dispute, and that the case is appropriate for a decision on summary judgment. The Court concludes that the Commission, the Board, and Harvard are entitled to summary judgment as a matter of law.
Statement of Facts
A portion of what is now the Union/Burr Hall was built in 1901. A prominent feature of the building is the Great Hall, about 40 by 94 feet and three stories high. The Great Hall was used as a freshman dining room for many years. Another portion of the Union/Burr Hall was added to the building in 1911. Harvard has now decided to locate a new Humanities Center in the Union/Bunr Hall. Construction began in February 1996 and is scheduled to be completed in April, 1997. There has been considerable controversy about Harvard’s decision to so renovate Union/Bunr Hall.
On July 7, 1995, Harvard filed an application for a variance with the Board. Harvard sought the variance to retain four sets of doors with a width less than 36 inches and to maintain the interior floor elevation of a porch balcony of the Union/Burr Hall. In its variance application, Harvard stated that the doors at issue and the porch balcony area were not open to the public. On July 10, 1995, the Board received Harvard’s variance request and notified the Commission because the application indicated that Union/Burr Hall was listed on the state and national registers of historic places. By letter dated July 18, 1995, the Commission informed the Board that the Commission has “reviewed” the application for a variance. The letter states that the Commission “requests” the Board to grant the variance. The letter further states that the Commission “understands that the building will be completely accessible to people with disabilities, and the variance requests are for three sets of doors not open to the public.” In its “Notice of Action,” dated July 26, 1995, the Board stated that the variance application was heard by the Board “as an incoming case” on July 24,1995, and that upon review of the materials submitted to the Board, the Board determined that “the doors in question and the porch are not open to and used by the public, therefore, variances are not required.” The Notice of Action further states that “(a]ny person aggrieved by the above decision may request an adjudicatory hearing before the Board within thirty (30) days of receipt of this decision by filing the attached request for an adjudicatory hearing. If after thirty (30) days, a request for an adjudicatory hearing is not received, the above decision becomes a final decision and the appeal process is through Superior Court.” Because no one requested an adjudicatory hearing, the Board did not conduct such a hearing.
The plaintiffs filed this lawsuit on March 26, 1996, and on that date obtained a temporary restraining order, ex parte, preventing any further construction *576 pending a hearing on a motion for a preliminary injunction on April 2, 1996. On April 4, 1996, the Court denied the request for a preliminary injunction.
Discussion
The plaintiffs first contend that the Board mistakenly determined that no variances are required. Pursuant to G.L.c. 22, §13A, the Board has promulgated rules and regulations to make public buildings accessible to, and safe for use by, physically handicapped persons. The statute provides that there shall be “no construction, reconstruction, alteration or remodeling of a public building except in conformity with said rules and regulations. ” Regulations are set forth at 521 C.M.R. §1.00 et seq. The statute further provides that the Board may grant a variance from the applicable rules and regulations. Pursuant to 521 C.M.R. §4.1.1.2, any person aggrieved by the Board’s action as to a variance may request an adjudicatory hearing within thirty (30) days of the decision. Finally, any party aggrieved by a decision of the Board may seek judicial review in the Superior Court pursuant to G.L.c. 30A, §14.
The Board interprets its regulations with respect to door width and floor level to apply only to doors and floors that are open to the public. The interpretation by the Board of its own regulations is an important consideration in construing those regulations. Boston Police Superior Officers Federation v. Boston, 414 Mass. 458, 462 (1993). Further, “(i]nthe absence of clear error, the interpretation an administrative body gives to its own rule is entitled to deference.” Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 782 (1980). 521 C.M.R. §27.1 provides that “All doors and doorways provided as a means of egress shall comply with the following: 27.2 Doors to all public areas shall have a minimum width of 36" . . . 27.3 At least one door of a pair of doors shall have a minimum "width of 36" . . .” 521 C.M.R. §29.1 provides that “The floor on any single story shall be of a common level throughout . . .” This Court can discern no clear error in the interpretation by the Board of its own regulations. The Board’s interpretation is not arbitrary, unreasonable, or inconsistent with the terms of the regulations themselves. Purity Supreme, 380 Mass. at 782. The evidence before the Board was to the effect that the doors would remain locked from the outside and would not be opened to the public. There was also evidence before the Board to the effect that the porch balcony was not intended to be used by the public.
There is another basis for sustaining the decision of the Board. The regulations define the term, “means of egress” as a “continuous and unobstructed path of travel from any point in a building or facility to a public space.” 521 C.M.R. §5.12. The regulations further define a “path of travel” as a “continuous, unobstructed path connecting all accessible elements and spaces within or between buildings, facilities or walks, that can be negotiated by a disabled person using a wheelchair, and which also is safe and usable by people with other disabilities.” 521 C.M.R. §5.3. Because the doors in question lead to stairs, and the porch in question to a single step, and because stairs are not accessible to persons in wheelchairs, neither the doors nor the porch are part of a “path of travel” and thus are not part of a “means of egress” as those terms are defined in the regulations of the Board. Accordingly, the doors and porch in question need not comply with the regulations. The Court concludes that the Board properly determined that no variance was required.
The plaintiffs next contend that, wholly apart from whether the decision of the Board was correct, the filing of the variance application by Harvard triggered mandatory review of the proposed renovation of Union/Burr Hall by the Commission pursuant to G.L.c. 9, §27C. The plaintiffs contend that the Commission never performed the review required by that statute.
General Laws c. 9, §27C provides in relevant part as follows:
As early as possible . . . prior to a state body’s . . . licensing, in whole or in part, a private project, the state body... licensing such project shall notify the commission of such project and the commission shall, within thirty days of receipt of such notice, determine whether such project will have any adverse effect, direct or indirect, on any property listed in the state register of historic places. If the commission does not make a determination within thirty days,... the proponent may proceed with the project. Upon a determination of adverse effect, the commission, the state agency and, in the case of a private project, the project proponent shall immediately consult to discuss ways to eliminate, minimize or mitigate the adverse effects . . . The commission’s review shall not be limited to the subject matter of the license, but shall extend to the entire project whether licensed or funded in whole or in part. . . . This section shall be interpreted and administered so as to eliminate, minimize or mitigate adverse effects to properties listed in the state register of historic places.
The term “Project” is defined in §26B of G.L.c. 9 as “action, activity, program, construction, or land modification, including, but not limited to, a building or structure, either directly undertaken by a state body, or which, if undertaken by a private person, in whole or in part seeks the provision of financial assistance by a state body or, in whole or in part requires the issuance of a license by a state body.” The term, “License” is defined in §26B of G.L.c. 9 as a “permit determination, order or other action, including the issuance of a lease, license, permit, certificate, vari- *577 anee, approval, or other entitlement for use, granted to any person . . .”
The Commission, the Board and Harvard urge that because the Board determined that no variance was required, the proposed renovation did not require “the issuance of a license by a state body,” and thus the proposed renovation did not constitute a “project” within the meaning of §27C. The Court agrees.
The plaintiffs argue that the Board’s Notice of Action constitutes a “permit determination” or “other action” within the meaning of §26B. The Court concludes that the Board did not issue a license of any kind to Harvard, and that Harvard in turn was not “granted” a license, permit, variance, approval, or other entitlement for use, by the Board. Section 27C requires the actual issuance of the license by a state body in order to trigger review by the Commission. The plaintiffs contend that the definition of “license” in §26B contains a typographical error because there should be a comma between the words “permit” and “determination,” and the plaintiffs point out that such a comma was inserted in the regulations. However, this Court’s conclusions are not affected by this argument. Even if the comma is inserted between the words, the Board’s Notice of Action in this case was not a “determination” within the meaning of the statute.
This Court concludes that by its letter of July 18, 1995, the Commission simply expressed support for the proposed variance requested by Harvard from the Board. The plaintiffs appear to urge that the letter demonstrated that the Commission limited, improperly, its statutory review to the doors and porch. The Court concludes that even if the Commission improperly narrowed the scope of its statutory review, any such error would be without legal effect in this instance because the Board concluded that no variance was required. The authority of the Commission to evaluate and review a project under §27C is derivative of the issuance by another state body of a license for that project. Indeed, the statutory definition of “project” requires this conclusion. Because the proposed renovation of Union/Burr Hall did not require a license, the Commission had no authority to act under §27C.
There is an alternative basis for concluding that the Commission and Harvard are entitled to summary judgment. The Commission did not “make a determination within thirty days” of the receipt by the Commission of notice from the Board as to the application by Harvard for a variance. Section 27C clearly provides that if the Commission does not make a determination within thirty days as to whether the project will have an adverse effect, Harvard “may proceed with the project.” This provision of §27C must be reconciled with another: “The superior court shall have jurisdiction in equity to enforce the provisions of this section and, on the petition of any party in interest, may alter, amend or revoke any order of the commission or state archaeologist.” This last quoted provision appears, curiously, at the end of the fourth paragraph of §27C, a paragraph which concerns the establishment of criminal liability as to any person who forges or falsely labels any archaeological or historical obj ect with the intent to represent that object as an original and genuine article. The provision granting jurisdiction to the superior court, however, is sufficiently broad to make plain that it is the intent of the statute to grant the court jurisdiction over more than archaeological forgeries. It may be that the appellate courts will determine that this provision granting the superior court jurisdiction is intended to provide an avenue of relief for a project proponent, a state body undertaking a project, or a state body funding or licensing a project, to challenge an order issued by the Commission. Further, in addition to orders issued by the state archeologistpursuant to §2 7C,'there may wellbe other situations in which the jurisdictional provision has application. This Court concludes, however, that the provision granting the Superior Court jurisdiction does not encompass a challenge by either the Commission or third parties to a decision by the Commission “not [to] make a determination” as to whether a proposed project will have an adverse effect. See Cummings v. Secretary of Environmental Affairs, 402 Mass. 611, 616-18 (1988).
Because this Court concludes that the Commission did not violate G.L.c. 9, §27C, it is not necessary for this Court to reach the other defenses (jurisdiction, statutes of limitation, and laches) asserted by Harvard, the Commission, and the Board. In particular, this Court does not address the defendants’ argument that the plaintiffs have not established a cause of action under G.L.c. 214, §7A because that statute permits an injunction to issue only against a “person” who both (1) causes “damage to the environment” and (2) violates a statute or other regulation the “major purpose of which is to prevent or minimize damage to the environment.” Here, Harvard urges, the plaintiffs allege that Harvard is causing damage to the environment and that the Commission and the Board are violating the environmental statutes.
Order for Judgment
For the reasons stated in this Memorandum of Decision, summary judgment is to enter in favor of the Commission, the Board and Harvard. The cross-motion of the plaintiffs for summaiy judgment is denied.