TEN PERSONS OF THE COMMONWEALTH[1] & another[2] *vs.*
FELLSWAY DEVELOPMENT LLC & others.[3]

Middlesex. May 5, 2011. - August 11, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Massachusetts Environmental Policy Act. Environment,* Environmental impact
report. *Practice, Civil,* Motion to dismiss, Declaratory proceeding,
Complaint. *Jurisdiction,* Damage to the environment. *Secretary of the
Executive Office of Energy and Environmental Affairs. Commissioner of
the Department of Conservation and Recreation. Administrative Law,*
Standing.

Summary of the Massachusetts Environmental Policy Act (MEPA), G. L.
c. 30, §§ 61-62H, and regulations promulgated thereunder. [368-370]

The Superior Court lacked subject matter jurisdiction of an action commenced
by the city of Medford and ten domiciliaries of the Commonwealth
(plaintiffs) pursuant to G. L. c. 214, § 7A, challenging a determination by
the Secretary of the Executive Office of Energy and Environmental Affairs
that no environmental impact report was required for a certain proposed
development project in a nearby reservation [374-378]; however, the
Superior Court did have subject matter jurisdiction over the plaintiffs'
§ 7A action against the persons whose actions were allegedly causing the
environmental damage, i.e., the Department of Conservation and Recreation
(department) and the developers of the project [378-380], which pleaded suf-
ficient facts to support their allegations that the department and developers
engaged in project segmentation [382-383].

In an action brought by ten residents of cities and towns surrounding a reserva-
tion and the city of Medford (plaintiffs), alleging violations of the Mas-
sachusetts Environmental Policy Act, G. L. c. 30, §§ 61-62H, arising from
a proposed development project on the reservation, the judge correctly
concluded that the plaintiffs, who asserted only generalized harm, did not
have standing to seek declaratory relief under G. L. c. 231A. [380-382]

CIVIL ACTION commenced in the Superior Court Department on
October 7, 2009.

[1]Friends of the Middlesex Fells Reservation, Inc.; David Hoff; Heidi Kelf;
Mike Ryan; Sandra Pascal; Carol McKinley; Hubert E. Holley; Karen Johnson;
Tom Lincoln; Catherine Moore; and Fritz Bosch.

[2]The city of Medford.

[3]Langwood Commons LLC; the Secretary of the Executive Office of Energy
and Environmental Affairs (Secretary); and the Commissioner of the Depart-
ment of Conservation and Recreation.

The case was heard by *Bruce R. Henry*, J., on motions to dismiss.

The Supreme Judicial Court granted an application for direct appellate review.

*Barry P. Fogel* (*Cheryl A. Blaine* with him) for the plaintiffs.

*David A. Guberman*, Assistant Attorney General, for Secretary of Energy and Environmental Affairs & another.

*Kerry T. Ryan* for Fellsway Development LLC & another.

*Gregor I. McGregor & Luke H. Legere*, for Massachusetts Association of Conservation Commissions, Inc., amicus curiae, submitted a brief.

*William H. Solomon*, for town of Stoneham, amicus curiae, submitted a brief.

CORDY, J. In this case, we consider questions surrounding the proposed redevelopment of private property within the Middlesex Fells Reservation (Reservation) into commercial office space and residential condominium units. The plaintiffs are ten residents of cities and towns surrounding the Reservation, who use and enjoy its parkland and parkways, and the city of Medford. They commenced an action in the Superior Court pursuant to G. L. c. 214, § 7A, and G. L. c. 231A against Fellsway Development LLC (Fellsway); Langwood Commons LLC; the Secretary of the Executive Office of Energy and Environmental Affairs (Secretary); and the Commissioner (commissioner) of the Department of Conservation and Recreation (DCR), seeking declaratory judgment and injunctive relief principally from alleged violations of the Massachusetts Environmental Policy Act (MEPA), G. L. c. 30, §§ 61-62H, and regulations promulgated thereunder, 301 Code Mass. Regs. §§ 11.00 (1998). The defendants filed separate motions to dismiss for lack of subject matter jurisdiction, pursuant to Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), and for failure to state a claim, pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). Both motions rested on *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611 (1988), which held that the Superior Court lacks subject matter jurisdiction to consider challenges to the Secretary's decision under MEPA not to require an environmental impact report (EIR). A judge in the Superior Court granted the motions and

dismissed the action with prejudice. We affirm in part, reverse in part, and remand for further proceedings.

1. *MEPA.* Before discussion of the specific facts in this case, we begin with a summary of MEPA and relevant regulations promulgated thereunder, so as to put the proceedings in context. MEPA "sets forth a broad policy of environmental protection in this Commonwealth by directing [all State agencies][4] to 'review, evaluate, and determine the impact on the natural environment of all works, projects or activities conducted by them and . . . use all practicable means and measures to minimize damage to the environment.' " *Allen* v. *Boston Redevelopment Auth.*, 450 Mass. 242, 245 (2007), quoting G. L. c. 30, § 61. See *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 136 (2000) (*Enos*).

MEPA's principal engine is the EIR. See G. L. c. 30, §§ 61, 62B. For many projects within MEPA's jurisdiction, before the project may commence, its proponent must prepare an EIR. An EIR must "contain statements describing the nature and extent of the proposed project and its environmental impact; all measures being utilized to minimize environmental damage; any adverse short-term and long-term environmental consequences which cannot be avoided should the project be undertaken; and reasonable alternatives to the proposed project and their environmental consequences."[5] G. L. c. 30, § 62B. The Secretary administers MEPA. After a public comment period, the Secretary issues a written certificate indicating whether the EIR "adequately and properly complies" with the provisions of MEPA, G. L. c. 30, § 62C. See 301 Code Mass. Regs. § 11.08(8).

Although MEPA, by its terms, applies only to the actions of State agencies or other public bodies, private development

[4]Agency is defined broadly to include "[a]ny agency, department, board, commission, or authority of the Commonwealth." 301 Code Mass. Regs. § 11.02(2) (1998).

[5]"The Legislature has given the phrase 'damage to the environment' a broad scope, defining it as 'any destruction, damage or impairment, actual or probable, to any of the natural resources of the commonwealth . . . .' " *Allen* v. *Boston Redevelopment Auth.*, 450 Mass. 242, 246 n.9 (2007), quoting G. L. c. 30, § 61. The Legislature has also directed State agencies or other bodies reviewing projects within the jurisdiction of the Massachusetts Environmental Policy Act (MEPA) to "consider reasonably forseeable climate change impacts, including additional greenhouse gas emissions, and effects, such as predicted sea level rise." G. L. c. 30, § 61.

"[p]roject[s]" fall within the scope of MEPA's jurisdiction where any party "seeks the provision of financial assistance[6] by an agency, or requires the issuance of a permit[7] by an agency."[8] G. L. c. 30, § 62. When the Secretary makes an initial determination that MEPA jurisdiction exists over a project, see 301 Code Mass. Regs. § 11.01(2), the private party is required to file an environmental notification form (ENF) with the Secretary informing him of the nature of the project and its potential impacts,[9] and to provide public notice of the filing of the ENF.[10] 301 Code Mass. Regs. § 11.05(1). See *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, 410 Mass. 100, 102 (1991), citing G. L. c. 30, § 62A. The Secretary reviews the ENF and then "issues a written certificate stating whether an [EIR] is required." *Enos, supra*. The regulations provide further guidance over this exercise. Once it is determined that a private project meets one of the triggers to MEPA jurisdiction (e.g., requires a permit or financial assistance), the Secretary then analyzes the project to determine if it meets or exceeds any of several "review thresholds" enumerated at 301 Code Mass. Regs. § 11.03. There are two categories of review threshold: those that require the filing of an ENF and a mandatory EIR (e.g., alteration of ten or more acres of wetlands; generation of 3,000 or more vehicle trips on an existing roadway to a single location), and those that require the filing of an ENF and "other

[6]The regulations promulgated pursuant to MEPA define "[f]inancial [a]ssistance" as "[a]ny direct or indirect financial aid . . . provided by any Agency." 301 Code Mass. Regs. § 11.02(2).

[7]A permit is defined as "a permit determination, order, or other action, including the issuance of a lease, license, permit, certificate, variance, approval or other entitlement for use . . . for a project." G. L. c. 30, § 62.

[8]A "[l]and [t]ransfer" also triggers MEPA jurisdiction. 301 Code Mass. Regs. §§ 11.01(2), 11.03. "Land Transfer" is defined as "[t]he execution and delivery by an Agency of any deed, lease, license or other document that transfers real property or an interest in real property." 301 Code Mass. Regs. § 11.02(2).

[9]"The ENF shall include a concise but accurate description of the Project and its alternatives, identify any review thresholds the Project may meet or exceed and any Agency Action it may require, present the Proponent's initial assessment of potential environmental impacts, propose mitigation measures, and may include a proposed Scope." 301 Code Mass. Regs. § 11.05(4) (1998).

[10]The notice must be posted in the "Environmental Monitor," an online publication of the Massachusetts Executive Office of Energy and Environmental Affairs, issued twice a month, and a "newspaper of local circulation in each municipality affected by the Project." 301 Code Mass. Regs. § 11.15(1) (1998).

MEPA review [only] if the Secretary so requires" (e.g., disturbance to endangered species habitat; generation of 2,000 or more vehicle trips on an existing roadway to a single location). 301 Code Mass. Regs. § 11.03.

Importantly, under anti-segmentation regulations, the proponent of a private project and any participating agency "may not phase or segment a Project to evade, defer or curtail MEPA review." 301 Code Mass. Regs. § 11.01(2)(c).

2. *Background.*[11] In 2000, Fellsway purchased a forty-acre parcel of private property within the Reservation. The Reservation is a 2,575 acre network of wooded parklands, ponds, and historic parkways under the control of the DCR with "important ecological features" and "[u]nique green space within close proximity" to Boston. The property at issue is an existing site that has been occupied for more than one hundred years, most recently as a hospital. The site is accessed from Woodland Road, a four-lane parkway that DCR has called "the central spine of the Fells Reservation."

There have been three separate proposals for redevelopment of the property. In 2000, Fellsway proposed a 914,000 square foot project, in which the existing hospital would be converted to offices. This first project iteration would have added 540,000 square feet of additional office space, and continued the use of 110,000 square feet of medical office condominium units. The project would have resulted in 8,920 additional vehicle trips per day on the Reservation's parkways. Fellsway proposed to construct physical alterations to Woodland Road to improve site access. The proposed road construction would have required a permit under the DCR regulations.[12] 350 Code Mass. Regs. § 2.08(2) (since repealed) ("no boulevard or [DCR] land shall be dug up, nor any opening made therein for any purpose without

---

[11]"In reviewing the sufficiency of a complaint, the court accepts as true the factual allegations of the complaint, and supporting inferences that may be drawn from those alleged facts." *Boxford* v. *Massachusetts Highway Dep't*, 458 Mass. 596, 598 (2010). See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 625 n.7 (2008).

[12]At the time, the permitting agency was the Metropolitan District Commission (MDC). The MDC and the Department of Environmental Management have since been merged to form the Department of Conservation and Recreation (DCR). See St. 2003, c. 41, § 1.

a permit").[13] Fellsway submitted an ENF, and the Secretary accordingly determined that because of the required permits, the proposed redevelopment fell within the jurisdiction of MEPA.[14] He ordered the mandatory filing of an EIR.

Unrelated to the development, in 2002, the Middlesex Fells Reservation Parkways District was listed on both State and Federal Registers of Historic Places. Soon after, the Legislature directed that DCR "shall preserve and protect the scenic and historic integrity of its roadways and boulevards." G. L. c. 92, § 35, as amended by St. 2003, c. 26, § 248.

In 2003, Fellsway submitted its final environmental impact report (FEIR).[15] The Secretary issued a certificate that the FEIR did not comply with MEPA because Fellsway did not adequately address "the significant volume of traffic that this development will generate and the associated impacts to the historic parkways and open spaces of the Middlesex Fells Reservation."

In 2005, Fellsway filed a notice of project change with the Secretary, identifying itself and Langwood Commons LLC (collectively, developers) as coproponents of a new redevelopment project. This second project iteration called for redevelopment of 250,000 square feet of office space and 450 residential units. The developers acknowledged the continued need for permits from DCR to construct roadway alterations, and the Secretary ordered them to file a supplemental final environmental impact report (SFEIR).

Meanwhile, in connection with its historic designation and the amendment of G. L. c. 92, § 35, in 2006, the DCR issued a

[13]In 2010, the DCR promulgated and recodified new regulations, 302 Code Mass. Regs. §§ 11.00, but the project in this case remains governed by the then-existing regulations, including 350 Code Mass. Regs. § 2.08 (since repealed).

[14]This iteration of the project also would have required permits for excavations to construct subsurface sewer, water, and utility connections.

[15]In 2001, the Secretary issued a certificate that Fellsway's draft environmental impact report (DEIR) did not adequately address evaluated environmental impacts, including traffic mitigation. Fellsway submitted a supplemental draft environmental impact report (SDEIR). In a certificate issued in 2002, the Secretary determined that the SDEIR was adequate, and ruled that Fellsway could file a final environmental impact report while noting that "traffic impacts and mitigation must be resolved . . . before the project may conclude MEPA review."

"Vision Plan" that studied "unacceptable" traffic safety issues on the Reservation's parkways. The DCR sought to combat the increasing arterial use of the Reservation's parkways as "attractive by-pass commuting routes." The DCR concluded that the "parkway's historic design intent of providing a leisurely driving experience and making recreational features accessible has been greatly compromised." The DCR's Vision Plan focused on Woodland Road, proposing to "reclaim" it by reducing the number of vehicle lanes from four to two, and building a bicycle and pedestrian path.

In 2007, after the DCR published the Vision Plan, the developers proposed a third iteration of the project, which was later further reduced to 225,000 square feet of office space and 310 housing units. The developers contended that this third iteration did not require any permits from the DCR because the developers eliminated all physical alterations of the roadway from their proposal and, thus, did not require any permits to proceed. They argued that unlike the regulations of the Massachusetts Highway Department that require a vehicular access permit for any project that creates a "[s]ubstantial [i]ncrease in or [i]mpact on [t]raffic over the current use," see, e.g., 720 Code Mass. Regs. § 13.02 (2007), the DCR regulations at that time only required a permit for direct physical alteration of a roadway. See 350 Code Mass. Regs. § 2.08(2). The DCR responded in a letter to the Secretary contending that, whether or not the developers required a permit, traffic mitigation construction on Woodland Road was necessary to prevent "public safety risks directly posed by development of the project." If the developers did not perform the roadway alterations, the DCR stated it would "need to take agency action directly on account of the project."

In 2008, the Secretary advised the developers that if they did not seek permits for roadway alterations, the "DCR's efforts to address traffic and safety problems caused by project-related vehicle trips would be a form of indirect [f]inancial [a]ssistance to the project." Therefore, the Secretary concluded that the project still was within MEPA jurisdiction, and he ordered that the developers prepare an SFEIR.

Instead, the developers filed suit in the Land Court, seeking a declaration that MEPA jurisdiction was not triggered by the

traffic mitigation measures proposed by the DCR that were not requested by the developers. Thereafter, they filed a motion for summary judgment. Prior to any rulings, the developers and the DCR entered into a memorandum of understanding (MOU) intended to settle the underlying Land Court action. The MOU included a declaration from DCR that the project "does not require a DCR permit or financial assistance from DCR." In turn, the developers pledged to pay into an escrow account $1.8 million to be used by DCR, within three years, to implement its transportation safety improvement plan (TSIP). The TSIP would adopt the measures proposed in the DCR's Vision Plan, including reducing Woodland Road to two lanes, and, at the same time, provide roadway alterations to mitigate increased traffic caused by the project.

The MOU was contingent on an advisory opinion from the Secretary, as authorized by 301 Code Mass. Regs. § 11.01(6)(b), that the project was not subject to MEPA jurisdiction. The Secretary issued an advisory opinion declaring that "the project as currently designed to avoid any and all [S]tate permitting requirements or indirect financial subsidies, is not subject to MEPA jurisdiction as long as the Proponent executes the proposed MOU and provides the agreed-upon funds for traffic mitigation to DCR."[16] The Secretary concluded that the design changes to Woodland Road proposed by the DCR and detailed in the TSIP "will require review under MEPA" and will therefore require the DCR to file an ENF. Last, he determined that the MOU did not violate the antisegmentation provisions of the MEPA regulations, 301 Code Mass. Regs. § 11.01(2)(c), because the developers' project and DCR's TSIP, though somewhat overlapping in purpose and expense, did not comprise a "common plan," as required.[17] He opined, "While there is no dispute that DCR's roadway safety improvement plans will address traffic resulting

---

[16]The Secretary also ordered the DCR to "issue revised regulations that will require approvals when there are substantial traffic increases to an existing curb-cut," similar to the regulations of the Massachusetts Highway Department. See *supra* at 372. See also 720 Code Mass. Regs. § 13.02 (2007). The Secretary sought the change "[i]n order to make certain that this situation does not arise again . . . ."

[17]"The Proponent, any Participating Agency, and the Secretary shall consider all circumstances as to whether various work or activities constitute one

from the Proponent's development proposal, it is hardly fair to say that the hospital redevelopment and construction of housing units on the site are part of any cooperative plan by DCR to facilitate that development." He also concluded that lane reduction on Woodland Road, and conversion to bicycle and pedestrian pathways, have "public benefits that are independent of the Proponent's development project."

The plaintiffs filed a complaint in the Superior Court to enjoin construction of the project and invalidate the Secretary's advisory opinion underpinning the MOU. Their complaint includes three counts. In Counts I and II, the plaintiffs seek declaratory judgment invalidating the Secretary's advisory opinion because (1) by entering the MOU with the developers, the DCR has "grant[ed] a permit," which triggers the mandatory filing of an EIR under MEPA; (2) the DCR and the developers segmented the project to avoid environmental review in violation of 301 Code Mass. Regs. § 11.01(2)(c), and the Secretary's conclusion to the contrary further contravened MEPA; and (3) the MOU is void because, in agreeing to its terms, the commissioner violated the mandatory language found in G. L. c. 92, § 35 (commissioner "shall preserve and protect the scenic and historic integrity of [DCR] roadways and boulevards"). Count III seeks declaratory and injunctive relief under G. L. c. 214, § 7A, alleging that the redevelopment project would cause damage to the environment in violation of statutes that "have as their major purpose prevention or minimization of damage to the environment," including MEPA and G. L. c. 92, § 35. As to all counts, the plaintiffs joined as defendants the developers, the Secretary, and the commissioner. Following the judge's allowance of the motions to dismiss for lack of subject matter jurisdiction and failure to state a claim, both the plaintiffs and the developers filed applications for direct appellate review, which we granted.

3. *Discussion.*[18] We review the allowance of a motion to dis-

Project, including but not limited to: whether the work or activities, taken together, comprise a common plan or independent undertakings . . . ." 301 Code Mass. Regs. § 11.01(2)(c).

[18]We acknowledge the amicus briefs of the Massachusetts Association of Conservation Commissions, Inc., and the town of Stoneham.

miss de novo. *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011). "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." *Id.* See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008).

a. *Subject matter jurisdiction.* "Subject matter jurisdiction is 'jurisdiction over the nature of the case and the type of relief sought' . . . ." *Doe, Sex Offender Registry Bd. No. 3974* v. *Sex Offender Registry Bd.*, 457 Mass. 53, 56 (2010) (*Doe*), quoting *Middleborough* v. *Housing Appeals Comm.*, 449 Mass. 514, 520 (2007). "The question at the heart of subject matter jurisdiction is, 'Has the Legislature empowered the [court] to hear cases of a certain genre?' " *Doe, supra* at 56-57, quoting *Wachovia Bank, Nat'l Ass'n* v. *Schmidt*, 546 U.S. 303, 316 (2006).

(i) *Section 7A.* General Laws c. 214, § 7A (§ 7A),[19] confers subject matter jurisdiction on the Superior Court to hear claims for declaratory and injunctive relief where (1) "ten persons domiciled within the commonwealth are joined as plaintiffs;"[20] (2) a person is causing or about to cause "damage to the environment"; and (3) "the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment." See *Cummings* v. *Secretary of the Executive Office of Envtl. Affairs*, 402 Mass. 611,

---

[19]In relevant part, G. L. c. 214, § 7A (§ 7A), provides: "The superior court for the county in which damage to the environment is occurring or is about to occur may, upon a civil action in which equitable or declaratory relief is sought in which not less than ten persons domiciled within the commonwealth are joined as plaintiffs, or upon such an action by any political subdivision of the commonwealth, determine whether such damage is occurring or is about to occur and may, before the final determination of the action, restrain the person causing or about to cause such damage; provided, however, that the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment."

[20]It is not in dispute that those "joined as plaintiffs," as well as the city of Medford, are proper plaintiffs. " '[P]erson' shall mean any individual, association, partnership, corporation, company, business organization, trust, estate, the commonwealth or any political subdivision thereof, any administrative agency, public or quasi-public corporation or body, or any other legal entity or its legal representatives, agents or assigns." G. L. c. 214, § 7A.

614 (1988) (*Cummings*). See also *Walpole* v. *Secretary of Envtl. Affairs*, 405 Mass. 67, 70 (1989) (*Walpole*).

(1) *The Secretary.* As in this case, the plaintiffs in *Cummings, supra* at 615, brought suit against the Secretary and identified as a violation of MEPA his determination that an EIR was not necessary. We affirmed the dismissal of the complaint against the Secretary for lack of subject matter jurisdiction, holding that "the provision in G. L. c. 214, § 7A, that the Superior Court may 'before the final determination of the action, restrain the person causing or about to cause such damage,' suggests in the [MEPA] context that the Legislature contemplated only the agency or authority or private person proposing a project, and not the public official who administers the statutory scheme, as 'the person causing or about to cause' environmental damage." *Id.* at 616, quoting G. L. c. 214, § 7A. Cf. *Walpole, supra* at 71. See Mass. R. Civ. P. 12 (b) (1). Because the Secretary was not the "person" causing the violative environmental damage, the plaintiffs could not point to any "specific provision in MEPA or in any other statute as being susceptible of violation by the Secretary's incorrect, or even arbitrary, determination that an EIR is not required." *Cummings, supra.*

The plaintiffs would have us distinguish *Cummings, supra,* by limiting its holding to cases where the Secretary is making a purely discretionary determination whether to require an EIR under his authority to order such review. 301 Code Mass. Regs. § 11.03. See 301 Code Mass. Regs. § 11.04 (authorizing Secretary to require "fail-safe review" for projects not meeting or exceeding review threshold). They argue *Cummings* involved a project meeting or exceeding a review threshold listed at 301 Code Mass. Regs. § 11.03 that required only the filing of an ENF and not the mandatory filing of an EIR.[21] Therefore, they argue, the only challenge was to the Secretary's discretionary authority to require "other MEPA review if [he] so require[d]" under 301 Code Mass. Regs. § 11.03. Here, by contrast, the

[21] "A review threshold that is met or exceeded specifies whether MEPA review shall consist of an ENF and a mandatory EIR or of an ENF and other MEPA review if the Secretary so requires." 301 Code Mass. Regs. § 11.03 (1998). The plaintiffs contend that the project in *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611 (1988), fell in the latter category.

plaintiffs argue that the Secretary's advisory opinion was qualitatively distinct from the discretionary decision in *Cummings* because it required a nondiscretionary interpretation of statutory terms to determine, in the first instance, whether MEPA jurisdiction existed (whether the project needed a permit or financial assistance from an agency that would trigger further MEPA review). See G. L. c. 30, § 62. Thus, the argument goes, conferring subject matter jurisdiction on a court, which by its nature is competent to answer a legal question of statutory interpretation, is appropriate here, while it was not in *Cummings, supra* at 617, because there, the discretionary question was "in the hands of a disinterested public official with expertise in environmental matters, shared by his or her staff but not ordinarily by judges."

We see no basis for such a distinction in the clear principle of law expressed in either *Cummings* or any other case that the plaintiffs cite in support of their argument.[22] As such, we decline their invitation so to limit the explicit rule that subject matter jurisdiction will not lie in a § 7A action against the Secretary challenging his decision not to require an EIR. See *Walpole, supra*. In *Cummings, supra* at 616-617, we did not suggest that the question turned on the discretionary or nondiscretionary nature of the Secretary's decision. Rather, we reasoned that, even if the Secretary's jurisdictional decision was incorrect or arbitrary, the project proponents, and not the Secretary, were the "person[s]" causing environmental damage as the term was used in § 7A. *Cummings, supra* 616. See *Allen* v. *Boston Redevelopment Auth.*, 450 Mass. 242, 247 (2007) (*Allen*) (Secretary's certification of EIR "does not constitute approval or disapproval of a particular project, which ultimately is left to

---

[22]The plaintiffs cite three additional cases, all of which are inapposite. See *Allen* v. *Boston Redevelopment Auth.*, 450 Mass. 242, 242 n.2, 259 (2007) (affirming vacatur of Secretary's certification of final EIR even though Secretary was not party); *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.*, 439 Mass. 738, 740 n.6, 745-746 (2003) (Secretary properly dismissed from action brought under § 7A, but subject matter jurisdiction exists in suit against permitting authority and developers challenging adequacy of supplemental final EIR); *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, 410 Mass. 100, 106-107 (1991) (developer and project proponent had standing under G. L. c. 231A to bring declaratory judgment action challenging scope of EIR as defined by Secretary).

various permitting agencies" further to analyze environmental risks). See also G. L. c. 30, § 62C. As such, the plaintiffs' claim against the Secretary under § 7A was properly dismissed. See *Cummings, supra* at 616-617.

(2) *DCR and the developers.* The plaintiffs have also brought an action under § 7A against the DCR and the developers. The Superior Court does have subject matter jurisdiction to hear the claims against these defendants. See *Cummings, supra* at 614-615. See also *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.*, 439 Mass. 738, 745-746 (2003) (*Sierra Club*); *Boston Invs. Ltd.* v. *Secretary of Envtl. Affairs*, 35 Mass. App. Ct. 391, 396-397 (1993). In *Cummings, supra* at 615, we stated that "if the plaintiffs . . . were alleging . . . that a developer or agency proposing a project failed to comply with the procedural requirement of a statute or regulation designed to protect the environment, the Superior Court would have subject matter jurisdiction under G. L. c. 214, § 7A." Cf. *Boston Invs. Ltd.* v. *Secretary of Envtl. Affairs, supra.* We further recognized in *Cummings, supra* at 614, quoting G. L. c. 214, § 10A (repealed), the predecessor to G. L. c. 214, § 7A, that "the purpose of MEPA was to protect the environment, and that, therefore, an allegation of a violation of MEPA or a regulation pursuant to MEPA qualified . . . as a claim that 'damage to the environment is occurring or is about to occur.' " Cf. *Walpole, supra*; *Boston Invs. Ltd.* v. *Secretary of Envtl. Affairs, supra.*

While § 7A is an improper vehicle to challenge the Secretary's advisory opinion on which the MOU is contingent, the plaintiffs allege that the MOU, itself, is violative of MEPA. The parties to the MOU are DCR and the developers. Specifically, the plaintiffs allege that the MOU accomplishes an impermissible segmentation of the project, in contravention of the MEPA regulation at 301 Code Mass. Regs. § 11.01(2)(c), by (1) excising parkway alterations that are necessary to accommodate increased traffic at the site's point of access, and had been a component of the redevelopment project for nearly a decade; and (2) phasing that project-specific traffic mitigation with other parkway improvements to be undertaken by DCR after completion of the project and with a $1.8 million contribution from the developers.[23]

---

[23]For the court to have subject matter jurisdiction over the claims against

The plaintiffs' claim of improper segmentation comports with the jurisdictional requirements of § 7A by (1) joining the DCR and the developers, the "persons" whose alleged improper segmentation is causing environmental damage, *Cummings*, *supra*; *Boston Invs. Ltd.* v. *Secretary of Envtl. Affairs*, *supra*, and (2) alleging that those "persons," in violating 301 Code Mass. Regs. § 11.01(2)(c), a predicate regulation the "major purpose" of which is the prevention or minimization of damage to the environment,[24] are causing or about to cause environmental damage. *Cummings*, *supra* at 614, quoting G. L. c. 214, § 7A.

The claimed violation of MEPA's antisegmentation regulation is conceptually indistinguishable from those claims challenging a deficient EIR that we have upheld against a rule 12 (b) (1) challenge. We have concluded, as we do here, that § 7A confers subject matter jurisdiction on the court to hear a claimed violation of MEPA, where the private project proponent and permitting authority, but not the Secretary, are joined as defendants. See *Allen*, *supra* at 247; *Sierra Club*, *supra* at 740 n.6, 745-746; *Enos*, *supra* at 142 (plaintiffs can bring claim against town under § 7A alleging that Secretary improperly certified SFEIR). See also *Boston Invs. Ltd.* v. *Secretary of Envtl. Affairs*, *supra* (Secretary dismissed, but subject matter jurisdiction in Superior Court for § 7A action against developer alleging nonconformity

---

the DCR, and not solely the developers, the DCR would have to meet the definition of a project "proponent." 301 Code Mass. Regs. § 11.02(2) ("Any Agency or Person, including a designee or successor in interest, that undertakes, or has a significant role in undertaking, a Project"). The facts alleged in support of the plaintiffs' argument that the DCR has become a project proponent by entering the MOU and agreeing to perform project-specific traffic mitigation work are sufficient to defeat a motion to dismiss. See *infra* at 382.

[24]In further support of their § 7A claim, the plaintiffs assert that the Secretary and the DCR violated G. L. c. 92, § 35, a statute that they argue has as its "major purpose" the prevention or minimization of damage to the environment. The statute directs the commissioner to "preserve and protect the scenic and historic integrity of its roadways and boulevards." While injury to the historic integrity of the parkways would qualify as "damage to the environment" under § 7A (defining the term to include "destruction, damage or impairment . . . to . . . historic districts or sites"), a plausible reading of G. L. c. 92, § 35, does not support the conclusion that "the major purpose" of the statute "is to prevent or minimize damage to the environment." The provision cited by the plaintiffs is included in a section that delineates the broad authority of various agencies to construct, maintain, and acquire roadways and boulevards. See generally G. L. c. 92, § 35.

with MEPA disclosure requirement). We remain unconcerned that the Secretary, though a nonparty, would be required to review further filings if the plaintiffs prevailed. As we stated: "Although the Secretary would not be a proper party to proceedings under § 7A . . . if an action under § 7A is properly brought, 'public officials [like the Secretary] . . . will be assumed to carry out their duty once the law under which they must act has been judicially declared.' " *Enos, supra,* quoting *Boston Invs. Ltd.* v. *Secretary of Envtl. Affairs, supra* at 397. The same reasoning applies here. If the plaintiffs were to prevail, the Secretary would not "thumb his nose" at the court's declaration that roadway alterations may not be segmented from the project, and thus, an EIR would be required. *Enos, supra.*

(ii) *G. L. c. 231A.* In their motion to dismiss under rule 12 (b) (1), the defendants argued that the Superior Court lacked subject matter jurisdiction because the plaintiffs did not have standing to maintain an action under G. L. c. 231A, and the judge agreed. "It is settled that G. L. c. 231A does not provide an independent statutory basis for standing." *Enos, supra* at 135, citing *Pratt* v. *Boston,* 396 Mass. 37, 42-43 (1985). Therefore, to invoke the court's general equity jurisdiction under c. 231A, "[t]he dispositive question is whether the plaintiffs have demonstrated that they have standing to maintain their action . . . ." *Enos, supra* at 134-135. "To have standing here, the plaintiffs' interests must come within the ' "zone of interests" arguably protected by [MEPA] . . . . [I]t is not enough that the plaintiff[s] be injured by some act or omission of the defendant; the defendant must additionally have violated some duty owed to the plaintiff[s].' " *Id.* at 135, quoting *Penal Insts. Comm'r for Suffolk County* v. *Commissioner of Correction,* 382 Mass. 527, 532 (1981). "[W]e must decide whether standing exists by examining several considerations, including the language of the statute in issue; the Legislature's intent and purpose in enacting the statute; the nature of the administrative scheme; decisions on standing; any adverse effects that might occur, if standing is recognized; and the availability of other, more definite, remedies to the plaintiffs." *Enos, supra* at 135-136.

The plaintiffs in this case are The Friends of the Middlesex Fells Reservation, Inc.; property owners in Malden, Medford,

Melrose, and Stoneham, towns that abut the Reservation; and the city of Medford, an abutting municipality. As persons who live in close proximity to the Reservation, and enjoy its "natural, cultural, historic and recreational features," they allege to be in the "zone of interests" protected by MEPA, and that the Secretary has impaired those interests by opining that the MOU is statutorily sound. *Id.* at 135.

We first examine the statute and case law in the area. We have said that "[w]e discern nothing in [MEPA's] language, purpose, or administrative scheme, however, to suggest a legislative intent" to confer standing on residents who bring suit alleging a generalized harm to nearby property. *Enos, supra* at 138. "To grant standing based on MEPA's ultimate goal of the protection of the environment would allow suit in almost every project within MEPA's jurisdiction, based on generalized claims by plaintiffs of injury such as loss of use and enjoyment of property." *Id.* "The general concept of environmental protection does not extend to allowing the plaintiffs to challenge the Secretary's action." *Id.* at 138-139.

We have conferred standing on a project proponent to seek a declaratory judgment challenging the Secretary's determination of the scope of an EIR, *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, 410 Mass. 100, 106 (1991), and suggested that a town facing construction of a project within its limits may challenge the Secretary's ultimate certification of an FEIR by way of G. L. c. 231A because "[a] decision to locate a project on land owned by the town would immediately impair the town's rights." *Enos, supra* at 141. Plaintiffs asserting an inchoate and nonparticularized injury to their use of property "may not reasonably be compared to either a project proponent or a town facing construction of a project within its limits."[25] *Id.*

Additionally, this standing analysis fits squarely within MEPA's administrative scheme. See G. L. c. 30, § 61. "The MEPA framework contemplates that persons such as the plaintiffs may play a role in the process, by submitting written comments or participating in any public or informational hearings that, by regulation, may be held." *Enos, supra* at 137-138. In this case, as

[25]Medford is an abutting city. The property slated for redevelopment is in the town of Stoneham.

envisioned by MEPA, the plaintiffs were invited to, and likely did, comment on the request for an advisory opinion prior to its issuance. In turn, the advisory opinion responds diligently to numerous issues raised by public commenters. Importantly, the plaintiffs have an alternative remedy, as discussed, of challenging a predicate violation of MEPA in an action under § 7A against the DCR and the developers. The judge properly allowed the motions to dismiss all claims under G. L. c. 231A.

b. *Failure to state a claim.* A complaint attacked for failure to state a claim must provide "[f]actual allegations . . . to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Iannacchino* v. *Ford Motor Co.,* 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555 (2007). After our review of subject matter jurisdiction, the plaintiffs' only surviving claim is the § 7A action against the DCR and the developers. *Cummings, supra* at 616. See note 23, *supra.* We must now consider whether the plaintiffs pleaded sufficient facts to support their allegations of substantive MEPA violations that would entitle them to declaratory and injunctive relief. The plaintiffs identify two separate legal theories: (1) that the DCR and developers engaged in project segmentation; and (2) that the MOU, in fact, constituted a "permit" from the DCR, which violated MEPA because no EIR had been certified prior to its issuance.

(i) *Antisegmentation regulations.* The Secretary's advisory opinion makes clear that roadway alterations contemplated by the MOU and TSIP "will address traffic resulting from the Proponent's development proposal." While it is unclear if this project-specific road construction, in isolation, would have required a permit under the applicable (but now repealed) DCR regulation, 350 Code Mass. Regs. § 2.08(2), the Secretary stressed that the TSIP, in whole, "will require review under MEPA and consultation with [the Massachusetts Historical Commission]." The Secretary opined that the project-specific roadway plans are but one component of the larger TSIP, which proposes extensive "traffic calming measures" on Woodland Road in the public benefit. Therefore, he concluded that the TSIP did not "comprise a common plan" between the DCR and

the developers to facilitate the redevelopment project. See 301 Code Mass. Regs. § 11.01(2)(c). We do not suggest that the Secretary's opinion is unpersuasive, but the question before him was one of statutory interpretation. The question now before us is different: did the plaintiffs allege sufficient facts to constitute a recognizable claim, under § 7A, of a violation of MEPA's substantive regulations? We are of the view that the plaintiffs have pleaded facts sufficient to support a claim that the DCR and the developers delayed specific roadway alterations, which might otherwise require a permit, in order to "phase or segment a Project to evade, defer or curtail MEPA review." 301 Code Mass. Regs. § 11.01(2)(c). See *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs, supra* at 114 ("in some cases, an environmental policy, now supported by regulation, prohibits the segmentation of a project by a developer into different components in order to evade environmental review").[26]

(ii) *The MOU is not a permit.* The plaintiff's argument that the MOU is a permit is without merit. See G. L. c. 30, § 62. The MOU is an agreement between two parties to litigation, the efficacy of which was further contingent on an advisory opinion by the Secretary. It is not an "order," "license," or "other entitlement for use," as "[p]ermit" is defined by MEPA. See *id.* The broad interpretation urged by the plaintiffs would stretch the definition of the word beyond its logical boundaries.

4. *Conclusion.* For the foregoing reasons, we affirm the judgment of the Superior Court dismissing Counts I, II, and III of the plaintiffs' complaint, brought under § 7A and G. L. c. 231A, against the Secretary for lack of subject matter jurisdiction. As against the developers and the DCR, we reverse only the judgment dismissing the plaintiffs' complaint seeking declaratory and injunctive relief under § 7A, and alleging a violation of MEPA's antisegmentation regulation promulgated at 301 Code Mass. Regs. § 11.01(2)(c). See Mass. R. Civ. P.

---

[26]If there are no material facts in dispute, on remand the case may be ripe for summary judgment, where on appeal a reviewing court accords "substantial deference to a reasonable interpretation of a statute [or regulation promulgated thereunder] by the administrative agency charged with its administration [and] enforcement." *Anawan Ins. Agency, Inc.* v. *Division of Ins.,* 459 Mass. 592, 596 (2011), quoting *Commerce Ins. Co.* v. *Commissioner of Ins.,* 447 Mass. 478, 481 (2006).

12 (b) (1), (6). The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*