Sanders, Janet L., J.
This action arises from the proposed conveyance of three land parcels owned by the Massachusetts Bay Transportation Authority (MBTA) to Wynn, MA, LLC (Wynn). The parcels are adjacent to the site in Everett where Wynn intends to build a casino. The plaintiffs, approximately forty taxable inhabitants of the Commonwealth, seek to prevent the sale, asserting that the MBTA, the Massachusetts Department of Transportation (MassDOT) (collectively, the State Defendants) and Wynn failed to comply with certain regulations and statutes that apply to the transfer. The Amended Complaint contains four counts, three of which assert substantive claims.[1] The case is now before the Court on the defendants’ Motion to Dismiss. This Court concludes that the Motion must be Allowed.
The defendants’ principal argument in support of the Motion is that the plaintiffs, who have no connection to the sale at issue, are not “aggrieved persons” and thus lack standing to bring the claims asserted in Counts I and II. This Court agrees. The issue of standing is one of subject matter jurisdiction: unless the challenged action causes the plaintiff to suffer some concrete injury or face a real and imminent danger of such injury, then he or she has no ability to ask a court to review the action. Although the legislature has in specific instances conferred standing upon taxpayers to challenge certain government actions, the statute upon which the plaintiffs rely here (the “Twenty-Four Taxpayer Statute”) is of no assistance to them since the MBTA has not expended money or engaged in any other action which has affected or which will adversely affect the plaintiffs’ pecuniary interests. Nor can the plaintiffs argue more generally that they are entitled to bring this suit simply as citizens of the Commonwealth under the so-called “public rights doctrine.” That is because they are not seeking to compel the performance of some clear-cut duty owed by government officials to the public at large.
The plaintiffs need not show a particularized injury to assert the violations of the Massachusetts Environmental Protection Act (MEPA) that form the basis for Count III. This Court concludes that Count III must also be dismissed, however. That Count alleges that the defendants violated MEPA by transferring the parcels to Wynn before the MEPA review process was completed. That procedural error was almost immediately corrected, however. Where there is no “damage to the environment” caused by the defendants, this Court has no subject matter jurisdiction. See G.L.c. 214, §7A.
BACKGROUND
The following is taken from the Amended Complaint and other materials appropriate for judicial notice. Wynn has applied for and received a license from the Massachusetts Gaming Commission to develop a casino in Everett. The three-million-square-foot casino will be located on land formerly owned and operated by the Monsanto Chemical Company. The sole road to the casino is Horizon Way, some part of which passes through Boston.
In 2013, Wynn and the City of Everett entered into discussions with the MBTA to acquire MBTA land adjacent to the Monsanto site so that Wynn could build a secondary access road to the casino. Wynn allegedly needed the road because the Boston Zoning Code prohibited the use of Horizon Way for access to the casino and because the Everett fire and police chiefs believed that secondary access was necessary for public safety. The MBTA’s “Everett Shops,” which serve as a maintenance and repair facility for MBTA vehicles, is located on the MBTA land.
Wynn and Everett initially sought to structure a deal in which Everett would first purchase the land from the MBTA in a transaction exempt from public bidding requirements, then transfer the land to Wynn. They put forward several proposals based on this arrangement but none resulted in an agreement. At some point, Wynn decided it would be better to acquire the land directly from the MBTA, leading to discussions between it and the State Defendants. These discussions culminated in a “Letter Agreement” between Wynn and the Secretary of MassDOT in August 2014 for the purchase of three parcels totaling about 2.024 acres. In exchange for the parcels, Wynn agreed to provide $6 million, to relocate the Everett Shops’ main entrance (currently located on one of the parcels) *127 and to construct an improved access route to the facility. The Letter Agreement specified that “[t]he exact location and dimensions of the . . . parcels are subject to mutual agreement and shall be confirmed by survey and creation of final legal descriptions.” See Exhibit M to Amended Complaint. The Letter Agreement also provided that Wynn’s offer was subject to the advertisement and bid requirements of G.L.c. 161, §5(b) and that the MBTA’s acceptance was conditioned on the absence of any bids with a value that exceeded Wynn’s “bid.”
Soon after the MassDOT Secretary executed the offer, the MBTA published a Notice of Proposal and Request for Response in which it sought the submission of bids within 30 days matching or exceeding Wynn’s offer. The MBTA attached a copy of the Letter Agreement to the notice. No competing offers were submitted.
In February 2015, Stephanie Pollack, the Secretary of MassDOT, and Beverly Scott, the General Manager and Rail & Transit Administrator of the MBTA, executed a quitclaim deed (the Deed) that, on behalf of the MBTA, conveyed to Wynn three parcels totaling 1.758 acres. In return, Wynn transferred to the MBTA the $6 million purchase price, less a $1.5 million deposit already made. Neither the MBTA Board of Directors nor the MassDOT Board of Directors approved the execution and delivery of the Deed.[2] Instead, the sale was consummated pursuant to a delegation of authority from the MassDOT Board, which purported to authorize the MassDOT Secretary to execute, on behalf of MassDOT and the MBTA, all contracts, instruments, and other agreements (including deeds and contracts for the sale of real estate) that are valued at less than $15 million.
In the meantime, the Secretary of Energy and Environmental Affairs (the Secretary), was engaging in a MEPA review of the broader casino project. Shortly after the Deed was delivered, the Secretary advised the MBTA and Wynn that the land transfer had violated MEPA because it occurred before the MEPA review process was completed, and because the conveyance documents did not contain sufficient provisions to ensure compliance with MEPA. In response, the State Defendants and Wynn entered into an Escrow Agreement in April 2015 pursuant to which the parties delivered into escrow the amount of the purchase price together with a deed that conveyed the parcels back to the MBTA. See Exhibit X to Amended Complaint. In particular, the Escrow Agreement states that the transfer “shall be deemed not to have taken place unless and until” the Secretaiy completes his MEPA review. Id. at HF. Upon completion of the MEPA review, “the MBTA shall reconsider and confirm the conveyance of the Property, or propose modifications or conditions to the conveyance or mitigation associated therewith, all in accordance with 301 CMR 11.12(5)(b) to address impacts ... to MBTA operations at the MBTA Everett Shops property resulting from the conveyance of the Property not already considered and addressed ,. .” Id. at 1ÍF. 1. If Wynn and the MBTA fail to reach agreement on any required mitigation conditions or changes to the conveyance, the Escrow Agreement allows the MBTA to rescind the transfer and return to the status quo ante. Id. at IF.l.c. In the meantime, Wynn is prohibited from beginning any construction activity on the parcels. Id. at SIF.l.e. As of the date of the Amended Complaint, the Secretary’s MEPA review was still ongoing.
This lawsuit was filed July 2015 in an effort to prevent the transfer of the parcels to Wynn. The plaintiffs, all residents of the Commonwealth, include individuals who purport to ride the MBTA subway and buses, pay real estate taxes in towns that the MBTA services and assesses, pay sales taxes dedicated to funding the MBTA, and drive on state highways owned and maintained by MassDOT. None of them has any connection to the actual sale.
DISCUSSION
Counts I and II of the Amended Complaint allege the same statutory violations. Specifically, the plaintiffs claim that: 1) the bidding process used in connection with the sale of the parcels to Wynn did not comply with the advertisement and bid requirements of G.L.c. 161A, §5(b); and 2) the State Defendants violated their enabling statutes, G.L.c. 161A, §3(q) and G.L.c. 6C, §2(k), because they did not obtain approval for the land transfer from their respective Boards of Directors. Count I seeks declaratory and injunctive relief. Count II purports to seek relief in the nature of mandamus. This Court concludes that the plaintiffs do not have standing to bring these claims.
The question of standing is one of critical importance since, in its absence, this Court has no subject matter jurisdiction over the case. “From an early day, it has been an established principle in this Commonwealth that only persons who have themselves suffered or who are in danger of suffering legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of government.” Tax Equity Alliance v. Commissioner of Revenue, 423 Mass. 708, 715 (1996), quoting Kaplan v. Bowker, 333 Mass. 455, 459 (1956). In order for a plaintiff to have standing so as to be entitled to a judicial forum, the plaintiff must allege an injury that was a direct and ascertainable result of the defendant’s actions. Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 21 (2006). “Mere generalizations and fears are not sufficient to establish aggrievement.” Ginther v. Commissioner of Ins., 427 Mass. 319, 324 (1998), quoting Nader v. Altermatt, 166 Conn. 43, 59 (1974). That is, the injury must not be remote, indirect or speculative. Nor can a plaintiff claim standing simply as a member of the general public, since one “zealous in the enforcement of law but without private interest” is not an *128 aggrieved person. Id., quoting Godfrey v. Building Comm’r of Boston, 263 Mass. 589, 590 (1928).
The plaintiffs contend that they have standing to maintain Count I pursuant to G.L.c. 29, §63, the Twenty-Four Taxpayer Statute (Section 63).[3] Section 63 permits not less than twenty-four taxable inhabitants to file a petition in equity to prevent a “department, commission, board, officer, employee or agent of the Commonwealth” from expending money or incurring obligations for an unlawful purpose. The transaction at issue here, however, involves neither the expenditure of money nor the imposition of an obligation of the sort contemplated by Section 63. Rather, it concerns a sale of land whereby the MBTA will receive $6 million. Accordingly, Section 63 is not applicable.
Of some guidance to this Court are those decisions that have construed a similar taxpayer statute, G.L.c. 40, §53 (Section 53), which contains almost identical language as Section 63. See Richards v. Treasurer & Receiver Gen., 319 Mass. 672, 674 (1946) (holding that Section 63 should be given the same construction of Section 53 in light of their substantial similarities). Section 53 permits taxpayers to bring a petition challenging actions whereby a town seeks to “raise or expend money” or otherwise incur obligations binding on the municipality. Where the action being challenged is the sale of property by the municipality, courts have consistently held that taxpayer plaintiffs have no standing under Section 53 because the governmental entity is not raising or expending any money. See, e.g., Clark v. Mayor of Gloucester, 336 Mass. 631, 632 (1958). Section 53 has been held to be equally inapplicable where the government action at issue is the grant of an easement, since the only obligation assumed by the municipality is one which will result in its receiving money, not spending it. Lynch v. Cambridge, 330 Mass. 308, 310-11 (1953). In short, where the obligation incurred by the government entity will not result in an expenditure that the taxpayers will be called upon to fund, these statutes do not expand on common-law principles of standing, and under those common-law principles, the plaintiffs have not suffered the kind of injury necessary to bring a legal challenge.
The plaintiffs nonetheless assert that there is a danger that the sale at issue will require the State Defendants to spend money in the future. As set forth in the Amended Complaint, the Everett Shops, where the MBTA performs maintenance and repair of transportation vehicles, is located on some portion of the parcels transferred. The plaintiffs allege that the proposed sale will thus affect the MBTA’s ability to service these vehicles and will cause it to spend money in order to relocate services elsewhere. This, in turn, could result in fare increases as a result of greater operational costs, and cause a hike in real estate and sales taxes, a portion of which are dedicated to funding the MBTA. These harms are entirely too speculative and hypothetical to confer standing on the plaintiffs. Certainly, the specific terms of the sale do not require the MBTA to expend money or to assume any obligations. As explained by the Supreme Judicial Court, where the harm alleged is a “little more than an allegation that an injury might have occurred if a series of events transpired in a certain way,” that is not enough for purposes of standing. Pugsley v. Boston Police Dept. 472 Mass. 367, 371 (2015).
The plaintiffs argue that, even if this Court concludes that they may not pursue their claims under Count I of the Amended Complaint, they may nevertheless make the same claims pursuant to Count II. That is because Count II is brought as a mandamus claim and, under the “public rights doctrine,” plaintiffs who might otherwise lack standing may seek to enforce duties owed to the public generally pursuant to G.L.c. 249, §5, the statute that took the place of the traditional writ of mandamus. There are two fundamental fallacies with this argument, however. The first is that this claim is properly asserted as one in the nature of mandamus. It is not. The second is that the public rights doctrine applies under the circumstances presented here. It does not. Accordingly, Count II must be dismissed as well.
“Relief in the nature of mandamus is extraordinary, and is granted in the discretion of the court to prevent a failure of justice in instances where no other relief is available.” Murray v. Commonwealth, 447 Mass. 1010, 1010 (2006), “A complaint in the nature of mandamus is ‘a call to a government official to perform a clear cut duty,’ and the remedy is limited to requiring action on the part of the government official.” Simmons v. Clerk-Magistrate of the Boston Div. of the Housing Court Dept., 448 Mass. 57, 59-60 (2006), quoting Doe v. District Attorney for the Plymouth Dist., 29 Mass.App.Ct. 671, 675 (1991). Mandamus is not a vehicle for obtaining review of a decision by public officials who have already acted so as to command them to act in a new and different manner. Boston Med. Ctr. Corp. v. Secretary of the Exec. Office of Health & Human Servs., 463 Mass. 447, 470 (2012). In the instant case, the plaintiffs do not seek mandamus to compel the State Defendants to perform a clear-cut nondiscretionaiy duty that they have not yet performed. Rather they seek to undo what the MBTA has already done. Indeed, the prayer for relief under Count II seeks a declaration that the deed to Wynn is void and asks for an injunction directing the State Defendants to return the land to the MBTA. None of these remedies is a form of relief available under mandamus.
Even if Count II were properly asserted as a mandamus claim, the plaintiffs have no standing to bring it. As already set forth above, they cannot demonstrate that they have suffered or are likely to suffer any concrete injury specific to them as a consequence of the defendants’ actions. The plaintiffs respond that *129 the public rights doctrine permits them, as citizens who would otherwise lack standing, to seek relief in the nature of mandamus in order to enforce a duty owed to the public at large. Under this doctrine, the people of the Commonwealth, rather than the individual plaintiffs, are considered the real party in interest. See Tax Equity Alliance, 423 Mass, at 714. The doctrine does not apply, however, in the absence of some specify duty to the public or where plaintiffs seek to enforce a duty which is owed by the government to a subset of citizens. This Court concludes that under the circumstances of this case, the public rights doctrine has no application.
The plaintiffs purport to seek mandamus to compel compliance by the State Defendants with G.L.c. 161A, §5(b), which establishes bidding procedures for MBTA land sales, as well as with G.L.c. 161A, §3(q) and c. 6C, §2(k), which define the scope of the MBTA and MassDOT’s boards’ authority in connection with such sales. These statutes, however, do not concern duties owed to the general public; rather, they are directed at prospective bidders and the boards of the respective government entities. As the SJC has explained, the public right doctrine has been and should be applied narrowly, particularly where the relief sought by the plaintiffs is not monetaiy damages but mandamus. That is because courts must be “extremely waiy about entering into controversies where we would find ourselves telling a coequal branch of government how to conduct its business.” Alliance, AFSCME/SEIU, AFL-CIO v. Commonwealth, 427 Mass. 546, 548 (1998) (concluding that plaintiff unions had no standing to bring mandamus against Department of Public Health Commissioner). In the absence of particularized harm and under the circumstances presented here, plaintiffs do not have the standing necessary to insist that this Court inject itself into the affairs of an executive agency.
The absence of a particularized injury to the plaintiffs does not bar them from pursuing their claim under Count III, which seeks equitable relief under G.L.c. 214, §7A for alleged MEPA violations. Section 7A permits the Superior Court to hear such claims where: 1) the plaintiffs are “ten persons domiciled within the commonwealth”; 2) the defendant is a “person” causing or about to cause “damage to the environment”; and 3) such damage “constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment.” Clearly, the plaintiffs are at least ten persons domiciled within the Commonwealth, and the defendants are “persons” alleged to have caused damage to the environment. Moreover, violations of the procedural requirements in MEPA or its regulations constitute environmental damage for the purposes of the statute. See Ten Persons of the Commonwealth v. Fellsway Dev. LLC, 460 Mass. 366, 378 (2011); Cummings v. Secretary of Evil Affairs, 402 Mass. 611,614 (1988). The problem with the plaintiffs’ claim is that the violation upon which Count III is based has already been remedied.[4] That is, there is no “damage” at this point sufficient to give this Court jurisdiction over this claim. The plaintiffs maintain that the MBTA violated MEPA because the transfer occurred before the MEPA review process was completed. The defendants effectively concede this procedural error (which must be assumed as true in any event on a motion to dismiss). The Amended Complaint also sets forth what happened thereafter, however. On April 3, 2015, the Secretary notified the defendants of the violation and suggested a possible remedy, which “could include reversal of the Land Transfer or placement of the Transfer in escrow until MEPA review is completed.” See Exhibit U to Amended Complaint at 10-11. On April 16, 2015, Wynn and the MBTA entered into an Escrow Agreement which essentially implemented the remedy suggested by the Secretary.
Specifically, the Agreement states that the transfer “shall be deemed not to have taken place unless and until” the Secretary has determined that all MEPA’s requirements have been satisfied, and that no transfer can occur until the Secretary determines that Wynn’s Final Environment Impact Report is adequate and a 60-day waiting period has elapsed. The Escrow Agreement further states that once the MEPA review is completed, the MBTA “shall reconsider and confirm or modify the conveyance of the Properly pursuant to the [Deed] and any other conditions thereof . . .” Finally, the Escrow Agreement permits the MBTA to return to the status quo ante should it fail to reach terms with Wynn satisfying MEPA’s requirements. The Amended Complaint contains no allegations that the defendants engaged in any activity after the execution of this Escrow Agreement that could constitute a separate violation of MEPA. Since the Escrow Agreement had the effect of correcting the only procedural violations alleged by Count III, this Court concludes that there is no ongoing “damage to the environment” so as to allow the plaintiffs to proceed.[5]
CONCLUSION AND ORDER
For the forgoing reasons, the Defendants’ Motion to Dismiss is ALLOWED, and it is hereby ORDERED that the Amended Complaint be DISMISSED.

 Count IV, entitled “preliminary and permanent injunctive relief,” is a remedy, not a separate claim.

 he plaintiffs refer to MassDOT and the MBTA as having separate boards of directors. However, the MassDOT board serves as the governing body of both MassDOT and the MBTA.

 fyhe plaintiffs do not and cannot contend that G.L.c. 231A provides them with a statutory basis for standing. See Pratt v. Boston, 396 Mass. 37, 43 (1985).

 The defendants make a number of other arguments as to why Count III should be dismissed. These arguments need not be addressed in light of this Court’s conclusion that the MEPA violation upon which Count III is based has been remedied.

 Since this Motion was filed, the Secretary has Issued a Final Environmental Report, and the 60-day waiting period has begun to run. The plaintiffs have indicated that they would seek a preliminary injunction to prevent the transfer of the parcels from occurring. They can only do so, however, based on the allegations of the Amended Complaint, which are limited to the issue regarding the premature transfer. Any challenge to the Secretary’s decision is not before the Court.